## A. W. GILLESPIE v. STATE.

No. A-529.  'Opinion Filed May 16, 1911.

(115 Pac. 620.)

WITNESSES—Privilege—Incriminating Evidence.  To permit a de-
mand to be made on a defendant in a criminal case, in the pres-
ence of a jury, to produce a paper or document referred to, con-
taining incriminating evidence against him, is a violation of the
immunity secured to him by section 21 of article 2 of our Con-
stitution, providing that no person in a criminal case shall be
compelled to give evidence against himself which will tend to
incriminate him, even though no order for the production of the
paper is made.

(Syllabus by the Court.)

*Appeal from Garfield County Court; James B. Cullison, Judge.*

A. W. Gillespie was convicted of illegal sale of liquor and ap-
peals.  Reversed.

*Robberts & Curran,* for appellant.
*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, PRESIDING JUDGE.  Upon the trial of this cause,
the state placed Winfield Scott, an attorney residing at Enid, upon
the witness stand, and by him proved that he had delivered to
appellant certain letters, signed by A. W. Gillespie or the Gil-
lespie Drug Company, which were addressed to Glazner B. Com-
pany; that the said attorney represented the Glazner B. Company
in collecting a claim against appellant; that at the time the wit-
ness delivered to appellant the letters in question appellant gave
witness a check in payment of the claim which witness held
against appellant; that said claim was for $288.10; that appellant
had said to witness that he would pay up, but that he wanted his
letters; that thereupon appellant gave witness a check for the
claim, and that witness gave appellant the letters in question.

The record then shows that the following proceedings were
had:

"Mr. McKeever:  At this time the state, having learned that

the letters are in the hands of the defendant, asks the defendant and his attorneys to produce said letters at this time. Mr. Robberts: To which request the defendant objects and here and now takes exceptions, which they ask to be noted of the fact, that they have requested in open court, in the presence of the jury, the defendant to take some action or step in this case. Mr. McKeever: At this time the request, as shown in the record, is withdrawn and corrected by the state's attorney as follows. Mr. Robberts: To which the defendant objects, for the reason that it is irrelevant, incompetent, and immaterial, and improper. The Court: The objection will be overruled. (To which ruling of the court, the defendant then and there duly excepted at the time.) Mr. McKeever: The state's attorney now requests the counsel for the defendant to produce the letters as testified to by the witness Winfield Scott. Mr. Robberts: We object to the request made of the defendant and his counsel in the presence of the jury. The Court: The objection will be overruled. (To which ruling of the court, the defendant then and there duly excepted at the time.) Mr. McKeever: At this time the state's attorney withdraws the request as made above for correction, and requests at this time the counsel to produce the letters referred to by the witness Winfield Scott. Mr. Robberts: To which request the defendant objects, and at this time excepts, and asks that the exception be made a part of the record, and allowed by the court. The Court: The request on the part of the state's attorney to request the defendant's counsel to furnish the letters testified about by the witness Winfield Scott, and objected to by the defendant, is overruled, for the reason that said letters have not been shown to have any connection with the facts in the case on trial."

The clear and unmistakable inference from this testimony was that Glazner B. Company were wholesale liquor dealers, and that appellant and the Gillespie Drug Company had been ordering intoxicating liquors from said firm, and that the letters that were referred to related to purchases of intoxicating liquors by appellant and the Gillespie Drug Company from said firm. It is true that the witness Scott did not state this in so many words; but, as we have before said, this is the inference which was necessarily drawn by the jury from his testimony. When the county attorney had proven that these letters had been delivered to appellant, and that appellant had claimed them as his, it was then the right of the state to question the said Winfield Scott as to the contents

of said letters; but the county attorney did not have the right to demand, in the presence of the jury, of the defendant, or the defendant's counsel, the production of such letters. Section 21 of article 2 of the Constitution of this state provides that no one shall be compelled to give evidence which would tend to incriminate him. This is not merely a formal technical rule, which may be enforced or dispensed with at the discretion of the courts. It is a mandatory, constitutional provision, securing to every defendant a valuable and substantial right. If a county attorney can, in the presence of the jury, demand of the defendant, or his counsel, the production of any letters or papers which may be proven to be in the possession of the defendant, of what value is this constitutional provision? It is true that making a demand upon a defendant to produce such letters or papers is a different thing from forcing him to produce them; but the effect is the same, because if a defendant refuses to comply with such a demand it is equivalent to admitting that the evidence demanded would incriminate him, if it were produced. The observation and experience of all practicing attorneys will sustain the statement that such an inference is more damaging to a defendant than a proven fact would be. When such a demand is made, a defendant must accept the alternative of either producing the letters, and thereby incriminate himself, or of having the jury place the strongest possible construction against him upon his failure to do so. If this can be done, the very life, body, and soul of the Constitution would be violated and trampled upon.

We are sustained in these views by the case of *McKnight v. United States*, 115 Fed. 972, 54 C. C. A. 358. The syllabus of that case is as follows:

"To permit a demand to be made on the defendant in a criminal case, in the presence of the jury, to produce a paper or document containing incriminating evidence against him, is a violation of the immunity secured to him by the fifth amendment to the Constitution, providing that no person in any criminal case shall be compelled to be a witness against himself, even though no order for the production of the paper is made, and the demand is made

solely, because of its supposed necessity, to authorize the introduction of secondary evidence."

Justice Day, now a member of the Supreme Court of the United States, in rendering the opinion of the court, said:

"A perusal of the decisions of the Supreme Court shows that no constitutional right has been the subject of more jealous care than that which protects one accused· of crime from being compelled to give testimony against himself. The right to such protection existed at the common law, and was carried into the Constitution that the citizen might be forever protected from inquisitorial proceedings compelling him to bear testimony against himself of acts which might subject him to punishment. In the present case the accused, in the presence of the jury, was, by direction of the court, called upon to produce the document which, it was alleged, contained the corrupt agreement which was the basis of the note given by irresponsible persons for the funds of the bank by McKnight's direction. The production of such a paper would have been self-incriminating to the defendant in the highest degree. It is true the learned judge made no order requiring its production; but the accused, by the demand made upon him before the jury, after proof tending to show his possession of the document, was required, either to produce it, deny or explain his want of possession of the writing, or by his very silence permit inferences to be drawn against him quite as prejudicial as positive testimony would be. Nor were the jury advised that the nonproduction of the writing afforded no ground for an inference of guilt. We think this procedure was an infraction of the constitutional rights of the accused, within the meaning of the fifth amendment to the Constitution.

"Recurring to the opinion of Mr. Justice Bradley, in the *Boyd Case* [116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746], *supra,* we may quote: 'It may be it is the obnoxious thing in its least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of the court to be watchful of the constitutional right of the citizen, and

against any stealthy encroachments thereon.    Their motto should be, *"Obsta principiis."* ' "

The opinion in that case was based upon the fifth amendment to the Constitution of the United States which provides that: "No person in a criminal case shall be compelled to be a witness against himself." It is true that the first 10 amendments to the Constitution of the United States were not intended to interfere with the operation of the state laws, and are limited in their effects to restrictions upon the powers of the United States courts. But, as the fifth amendment to the Constitution of the United States is substantially the same as section 21 of our Bill of Rights, we regard the decision of Justice Day as applicable to the case now before us.

It is true that the court did instruct the jury that they were not to take into consideration the testimony of the state's witness, Winfield Scott, regarding the correspondence with reference to which he had testified; but the court nowhere instructed the jury that they were not to consider the demand which was made upon appellant and his counsel, in their presence, to produce the letters referred to. We are strongly inclined to the opinion that, even if the court had so instructed the jury, it would not have cured the error committed. It would be a dangerous procedure, indeed, to permit constitutional provisions which guarantee to a defendant a substantial right to be ignored and violated in the examination of a witness, and then to hold that this error was cured by a subsequent instruction by the court to the jury that they must not consider anything that occurred which was calculated to destroy such constitutional rights. It is simply impossible for a court to wipe out impressions which will result from demands of the kind referred to. The only safe course for a court to pursue is not to permit such conduct to occur.

The other alleged errors assigned have all been decided by this court adversely to the contentions of appellant, and therefore need not be discussed.

For the error above pointed out, the judgment of the trial court is reversed, and the cause is remanded for a new trial.

ARMSTRONG and DOYLE, Judges, concur.