# E. M. BLANTON et al. v. STATE.

No. A-4790.   Opinion Filed Oct. 1, 1925.
(239 Pac. 698.)

420

Hatchett & Semple, O. R. Fowler, Williams & Finney, and Victor C. Phillips, for plaintiffs in error.

George F. Short, Atty. Gen., and Baxter Taylor, Asst. Atty. Gen., for the State.

EDWARDS, J. For brevity and convenience, the plaintiffs in error will be referred to as defendants. This proceeding is an appeal from an order of the district court of Bryan county adjudging the defendants guilty of a direct contempt of court, and sentencing them to pay a fine of $50 and to serve 30 days in the county jail. The case arose in this manner: These defendants were served with a subpoena duces tecum to appear before the grand jury of Bryan county, the subponea containing an order as follows:

"And bring with you, on behalf of the state, all records of the membership, minutes of all regular or called meetings, and all other records, in your possession or under your control, of the Knights of the Ku Klux Klan, Durant Klan No. 42."

The defendants and E. G. Villers appeared before the grand jury and testified, but did not produce the records called for in the subpoena. Thereafter, the grand jury filed an "application for order adjudging

witnesses to be in contempt of court." This instrument set forth that the defendants had failed to produce records as directed; that the records were needed by the grand jury in the investigation relating to the alleged whipping of one Ned Bates and Tom Mayo; that the witnesses had conspired to withhold and suppress these records and were depriving the grand jury of evidence it needed. The court was asked for an order committing the defendants and Villers for contempt, until they should purge themselves by producing the said records. The court then made an order to the effect that, unless defendants and Villers brought said records into court by 1:30 p. m. of that date, they would be adjudged guilty of contempt. At the hour of 1:30, defendants and Villers came into court without the records, and the court inquired if they were ready to comply with the order made upon them to produce the records requested by the grand jury, and the said defendants and Villers informed the court that they had not produced the records, and the court thereupon adjudged them guilty of contempt for refusing to comply with said order. At their request, the court held in suspension the passing of judgment and sentence until the Monday following. At that time, the parties appeared, made a written request for a trial by jury, which the court denied, and held the charge was for a direct contempt. The parties then requested leave to file a written answer, which was granted, and the written answer filed. The court further ruled that the burden was on the defendants and Villers to purge themselves of the contempt. The answer is joint, and is, in substance, that Villers is the chief officer, with the title "Exalted Cyclops of the Ku Klux Klan, Durant Klan No. 42." The defendant Stephenson says he was at one time secretary of said Klan but had not been since June, 1923. The defendant Blanton denies that he is assistant secretary of the Klan. All deny that they have posses-

sion of any of the records or files of the said Klan, deny any knowledge of where said books, records, and files are, deny that they know who has said books, records, and files, and allege that it is not in their power to produce the same or to get them. State that in obedience to subpoenas issued by the grand jury they appeared before said grand jury and truthfully answered all questions concerning all matters whatsoever. The answer was verified by the parties.

Thereupon each of the parties, together with Jim Blanton, a brother of the defendant E. M. Blanton, testified before the court. The testimony of defendant Blanton is that he had been the secretary of Durant Klan, but his term expired in February preceding, and since that time he had not had custody of the records, and had no idea where they were; that the defendant Stephenson who succeeded him as secretary, told him at one time he was going to resign as secretary and wanted him (Blanton) to act, but had not turned over to him any records, though his brother had informed him that Stephenson had left a box of books at his place of business, but the witness had never seen them.

Defendant Stephenson testified that he resigned as secretary about June 25th, and that he left the books and records at Blanton's store under the counter and told a brother of the defendant Blanton to give them to Ed, meaning the defendant E. M. Blanton, who was at that time out of the city. This testimony was corroborated by Jim Blanton, brother of the defendant Blanton.

Villers testified that he was Exalted Cyclops, that he knew nothing about the records, never had the custody of them, and had endeavored to get them, but was unable to find them.

All testified they were perfectly willing to deliver them to the grand jury, if in their power to do so. The

evidence was further that the records contained nothing in reference to any whippings or which would throw any light on any alleged whippings.

The state offered no evidence to controvert the testimony of defendants. At the conclusion of the evidence, the court made an order adjudging Blanton and Stephenson guilty of contempt and assessed a punishment of 30 days in jail and a fine of $50, and discharged Villers. Motion for a new trial was filed and overruled.

The defendants present the following assignments of error: First, that the judgment and sentence is contrary to the evidence and not supported thereby. Second, that if the acts complained of were a contempt, it was an indirect contempt and defendants were entitled to a jury trial. Third, that the court adjudged defendants guilty without hearing any evidence or giving them an opportunity to be heard. Fourth, that no charge or accusation was made against defendants. Fifth, that the subpoena duces tecum was unauthorized and void, and without a showing that the records contained material evidence and were too general. These assignments, so far as material to a decision, will be considered. Article 2 of the state Constitution, § 25, provides:

"The Legislature shall pass laws defining contempts and regulating the proceedings and punishment in matters of contempt: Provided, that any person accused of violating or disobeying, when not in the presence or hearing of the court. or judge sitting as such, any order of injunction, or restraint, made or entered by any court or judge of the state shall. before penalty or punishment is imposed, be entitled to a trial by jury as to the guilt or innocence of the accused. In no case shall a penalty or punishment be imposed for contempt. until an opportunity to be heard is given. (Bunn's Ed. § 34.)"

And section 2 of the schedule continued in force all laws of Oklahoma territory then in force not repugnant

to the Constitution; thereby sections 1697, 1698, 1699 and 1700, Comp. St. 1921, were continued in force as the law of contempt; said sections having been enacted by the territorial Legislature in 1895.

Contempts are classified and divided as "civil" contempts and "criminal" contempts. The distinction between "civil" and "criminal" contempts is this: The former consists in disobeying some judicial order made in the interest of another party to a proceeding. The latter consists of acts disrespectful to the court, or obstructive to the administration of justice, or calculated to bring the court into disrepute. In the case at bar, the order violated not being made for the benefit of any party to any litigation or matter pending in the court is not a "civil" contempt, but is an act obstructive to the administration of justice, and is a criminal contempt. Gudenoge v. State, 2 Okla. Cr. 110, 100 P. 39.

Contempts are further classified as direct and indirect contempts. Section 1697, Comp. St. 1921, is as follows:

"Contempts of court shall be divided into direct and indirect contempts. Direct contempts shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view and presence, and of the unlawful and willful refusal of any person to be sworn as a witness, and the refusal to answer any legal or proper question; and any breach of the peace, noise or disturbance so near to it as to interrupt its proceedings, shall be deemed direct contempt of court, and may be summarily punished as hereinafter provided for. Indirect contempts of court shall consist of willful disobedience of any process or order lawfully issued or made by court; resistance willfully offered by any person to the execution of a lawful order or process of a court."

A civil contempt may be either direct or indirect, and a criminal contempt may be either direct or indirect. If

a contempt is indirect, the person so charged, upon demand, has a right of trial by jury as to guilt or innocence. Section 25, art. 2, State Constitution. And, since the defendants in this case demanded a trial by jury, it is necessary that we determine whether the contempt charged was direct or indirect. For if indirect, defendants were denied a constitutional right in denying them a trial by jury, and were denied a statutory right in being proceeded against without a written accusation. It will be observed that section 1697, Comp. St. 1921, above quoted, sets out what shall constitute a direct contempt, and a direct contempt is therein defined as: First. Disorderly or insolvent behavior during the session of the court in its immediate view and presence. Second. Unlawful and willful refusal of a person to be sworn as a witness, and the refusal to answer any legal or proper question. Third. Any breach of the peace, noise, or disturbance so near to the court as to interrupt its proceedings. The numbering of the subdivision do not appear in the statute, and are put here for our own convenience. The contempt charged certainly does not fall under the second and third subdivision, since defendants did not refuse to be sworn nor to answer any question, and committed no breach of the peace, noise, or disturbance near the court. Then, if the contempt charged is a direct contempt, it must fall under the first subdivision as disorderly or insolent behavior during the session and in the immediate presence of the court. "Disorderly" is defined as follows:

"Not complying with the restraints of order and law; tumultuous; unruly; lawless; turbulent; offensive to good morals and public decency; notoriously offensive; as disorderly conduct." Webster.

"Insolent" is defined as follows:

" 'Insolent' is defined to be anything said or done rudely; saucy, insulting, abusive, offensive."

In our judgment the conduct, attitude, and bearing of the defendants before the court was neither disorderly nor insolent within the meaning of the law. The contempt charged was not a direct contempt. Our attention has been called to the case of Burnett et al. v. State, 8 Okla. Cr. 639, 129 P. 1110, 47 L. R. A. (N. S.) 1175. That case is not authority for the proceedings in this case. In the Burnett Case a written order was made by the trial judge ordering the employes of the Farmers' and Merchants' Bank to deliver to the bank commissioner certain books and papers. On their failure to do so, an information was filed by the Attorney General charging certain officers of the bank, defendants in that case, with contempt in failing to comply with the order. To this information a motion to quash, a demurrer, and finally an answer to the rule was filed, which, among other things, denied that the defendants had possession of said records or were able to produce them. To which answer the state filed a reply which formed the issue before the court. The proceeding there was clearly a proceeding to punish for an indirect contempt. No demand for a jury trial was ever made. A considerable volume of evidence was introduced by the state upon which the court rendered judgment holding the defendants in contempt, which judgment, we think, was eminently correct. See, also, Ex parte Nichols, 16 Okla. Cr. 159, 181 P. 518.

We are clearly of the opinion that the contempt here charged against the respondents is an indirect contempt. Since this was an indirect contempt, if the acts constituted contempt as being a willful disobedience of a process (the subpoena duces tecum), a contempt proceeding could not be had without the filing of an accusation against the defendants as provided by Comp. St. 1921, § 1699, which reads as follows:

"In all cases of indirect contempt the party charged with contempt shall be notified in writing of the accusa-

tion and have a reasonable time for defense; and the party so charged shall, upon demand, have a trial by jury."

So even if it should be said that a jury trial was waived by defendants, in not demanding the same when first brought before the court, yet there being at that time no accusation as required, there was no proper proceeding upon which to predicate a trial for indirect contempt.

In Ex parte Nichols, supra, it is held:

"Any willful disobedience of any process or order lawfully issued or made by any court in this state, not committed in the immediate view and presence of the court, is an indirect contempt of court. In such cases, the contemner must be proceeded against by written accusation, and upon demand shall be granted a trial by jury." Ex parte Plaistridge, 68 Okla. 257, 173 P. 646; Blanchard v. Bryan, 83 Okla. 33, 200 P. 444.

If a proceeding in contempt by accusation had been begun and a jury waived, the court might properly, under the evidence, have held that the testimony disclosed no reasonable excuse for the defendants not producing the records required by the subpoena duces tecum, or that the explanation given by them was evasive or showed they contributed to their inability to produce the records called for.

This court perceives that if the ability of a grand jury to procure records and documents necessary in matters under investigation before it be refused, such refusal may seriously hamper the administration of justice, and it appears desirable that the court should have power to deal summarily with any disobedience of a proper order. But the matter is one for the legislative branch of the government, and not the judicial. We are not at

liberty to disregard the plain provision of the Constitution and the statute law.

The case is reversed and remanded.

BESSEY, P. J., and DOYLE, J., concur.