RICE v. STATE BOARD OF MEDICAL EXAMINERS.

No. 35622. May 12, 1953.

257 P. 2d 292.

Don Welch, Don E. Welch, and Thomas E. Shaw, Madill, for plaintiff in error.

B. E. Harkey, Oklahoma City, for defendant in error.

CORN, J. Plaintiff brought this action (April 22, 1951) seeking to enjoin defendant from unlawfully practicing medicine without a license. The first cause of action alleged that our statutes (59 O. S. 1951 §§491-492) make it unlawful for any person not holding a valid, unrevoked certificate authorizing him to practice in this state to engage in, offer to engage in, or to hold himself out as qualified to practice medicine; that for at least four years prior to filing the petition defendant had been holding himself out as a qualified medical doctor and engaging in the practice of medicine in violation of the statutes and to the injury of the public.

The second cause of action alleged that chapter 16A, Title 59, page 357, S. L. 1947 (59 O. S. 1951 §§731.1-731.6), effective May 22, 1947, make it unlawful for any person not holding a valid, unrevoked license issued under the laws of this state to engage in, offer to engage in, or to hold himself out as qualified to make diagnosis and treatment of any human ill defined in such act. Further, that defendant was not then, or at any time hereafter mentioned, the holder of a legal, unrevoked license authorizing him to practice any branch of the healing arts; that from May 22, 1947, to the date of filing the

petition, defendant had willfully, wrongfuly and unlawfully engaged in, and had held himself out as qualified in, the diagnosis and treatment of human ills, and had appended the word "doctor" in front of his name, in violation of such act, and would so continue to do, to the irreparable damages of the public, unless perpetually restrained and enjoined therefrom, and that plaintiff had no adequate remedy at law.

Subpoena duces tecum was issued and served upon defendant commanding him to produce his records disclosing the names of the patients he had treated and the treatment administered.

Defendant moved to quash such subpoena on the grounds production of his records would be violative of the confidential doctor and patient relationship and would be a disclosure of privileged matter; and, if forced to comply therewith, the information contained in such records would tend to prove the guilt of a criminal offense for which he might be subject to criminal prosecution. The motion to quash was overruled, but enforcement of the subpoena was stayed during pendency of this appeal.

It is urged on appeal that enforcement of the subpoena duces tecum is violative of art. 2, §21, of our Constitution, which provides:

"No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided; * * *"

We agree with this contention. It cannot be questioned but that the provisions of 59 O.S. 1951 §§491, 500 and 731.4 are penal in nature. The general rule against self-incrimination is stated in 58 Am. Jur., Witnesses, §36, in the following manner:

"No principle of the common law is more firmly established than that which affords to a witness the privilege of refusing to answer any question that will criminate himself. As the common law had it, 'nemo tenetur seipsum accusare.' * * *"

And section 69 of the same text further states:

"The seizure or compulsory production of a man's private books or papers to be used in evidence against him is not substantially different from compelling him to be a witness against himself. Accordingly, the privilege of an accused not to be compelled to give evidence against himself in a criminal proceeding protects him from the compulsory production of personal books or papers that contain evidence which would tend to incriminate him or expose him to a penalty or forfeiture. Such seizure or compulsory production is within the spirit of constitutional provisions providing that no person shall be compelled to testify against himself in a criminal cause. * * *"

One of the earliest applications of such principle in this jurisdiction may be observed in our early decision in Gillespie v. State (1911) 5 Okla. Cr. 546, 115 P. 620, 35 L.R.A. (N.S.) 1171, Ann. Cas. 1912D, 259, wherein it was pointed out that the constitutional provision above quoted is not merely a formal, technical rule to be enforced or dispensed with at the court's discretion. Rather, it is a mandatory constitutional provision which secures to every individual a *valuable and substantial right*.

Mindful as we are of the so-called "modern tendancy" to abrogate individual rights on the ground that the exigencies of the moment require it, and that by so doing the courts are able to "get at the truth of the matter," we think the language (quoted in the Gillespie case, supra) in Boyd v. U.S., 116 U.S. 616, 6 S. Ct. 524, 29 L. Ed. 746, @ 752, particularly apropos.

The court's opinion quoted from McKnight v. U.S., 115 F. 972, as follows:

" * * * A perusal of the decisions of the Supreme Court shows that no constitutional right has been the subject of more jealous care than that which protects one accused of crime from being compelled to give testimony against himself. The right to such protection existed at the common law, and was carried into the Constitution that the

citizen might be forever protected from inquisitorial proceedings compelling him to bear testimony against himself of acts which might subject him to punishment. * * *

" "* * * It may be it is the obnoxious thing in its· least· repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be legally construed. A close and literal construction deprived them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of the court to be watchful of the consitutional right of the citizen, and against any stealthy encroachments thereon. Their motto should be, "Obsta principiis." ' ***"

It is unnecessary to prolong this discussion by citation and comparison of innumerable authorities upon this question, or to trace the development and the underlying basis for the reasoning upon which the rule is founded. It is enough to note that the deprivation of human rights and destruction of constitutional guarantees is not accomplished by a complete denial of any constitutional right, but is accomplished by a gradual wearing away of the whole by means of "silent approaches and slight deviations from legal modes of procedure." Such an "approach" may be observed in the argument urged herein, that no prosecution pends against defendant for any violation of the penal code. This argument is unpersuasive. The duty of the court is to be watchful of the constitutional rights of every citizen. We are of the opinion and hold that the trial court erred in refusing to sustain defendant's motion to quash the subpoena duces tecum which issued herein, for the reason that the subpoena was nothing more than an attempt to work a compulsory production of the defendant's records into court in order that they might be used in evidence against his interests. This is such a sit-

uation as the quoted constitutional inhibition was adopted to defeat. It is unnecessary to consider other questions herein presented.

The judgment is reversed, with directions to sustain defendant's motion to quash.

HALLEY, C.J., JOHNSON, V.C.J., and WELCH, DAVISON, ARNOLD, WILLIAMS, and BLACKBIRD, JJ., concur. O'NEAL, J., dissents.