**E. W. O'NEAL, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–13982.**

Court of Criminal Appeals of Oklahoma.

Feb. 25, 1970.

Rehearing Denied May 6, 1970.

Red Ivy, Chickasha, for plaintiff in error.

G. T. Blankenship, Atty. Gen., for defendant in error.

---

1. This appears in the casemade as States Exhibit # 1, at page 27.

· BRETT, Presiding Judge.

The Plaintiff in Error, E. W. O'Neal, hereinafter referred to as defendant, was charged by Information in the District Court of Oklahoma County in case no. 31054, with the crime of Perjury; was tried by a jury, found guilty, and the punishment left to be assessed by the Court. On November 8, 1965, defendant was sentenced to one year imprisonment in the state penitentiary at McAlester, and costs, in accordance with the verdict of the jury, and from that judgment and sentence he now appeals.

The opinion rendered on May 21, 1969, in which this Court affirmed defendant's conviction, was withdrawn from publication on February 25, 1970; and this opinion results from defendant's Petition For Rehearing filed on June 3, 1969, in accordance with Rule 16 of the Rules of this Court, is rendered in lieu of the earlier opinion.

### I.

The record shows that on October 25, 1965—the day preceding trial—defendant filed an "Amended Motion to Quash and Set Aside Information Filed Herein." On the following day October 26th, the trial court entered the following order: "that the defendant's demurrer, motion to quash, motion to suppress, and motion to dismiss to, and the same are hereby overruled." Thereafter, defendant's trial commenced.

The facts adduced at the trial reveal that an appearance bond [1] in District Court, No. 29289, was submitted in evidence, which stated on its face that on January 8, 1964, defendant was worth in excess of $3,000.00 and freeholder of property described as Block 3, Artesian Springs Second Addition to Oklahoma City, Oklahoma. Alene McGowan testified that defendant signed said bond before her. A quit claim deed [2] was admitted in evidence showing transfer of the aforementioned property from Valdhe F. Pitman to E. W. O'Neal on August 1, 1963, which was filed August 2, 1963.

---

2. This appears in the casemade as States Exhibit # 2, at page 36.

A quit claim deed [3] was admitted into evidence which was dated August 2, 1963, and notarized the same day, showing the transfer of the same property from defendant back to Valdhe F. Pitman. This instrument indicated that it was filed February 11, 1964. There was also admitted into evidence, as State's Exhibit #4 a Memorandum Agreement between Valdhe F. Pitman and E. W. O'Neal, dated July 31, 1963; and two other exhibits were introduced.

In presenting its case in chief, in addition to the testimony of Alene McGowan the State offered the testimony of the following witnesses: W. H. Regan, deputy court clerk who identified the bail bond; Bryan Beaty, an employee of the County Clerk's Office, who identified the two quit claim deeds as having been filed in that office, and who testified on cross-examination that defendant was shown to be the record property owner from August 2, 1963, to February 11, 1964, and that there were no encumbrances filed against the property during that period of time; Ruby Jewell Rodgers, a secretary who typed and witnessed the first agreement [exhibit #4] between defendant and Pitman; Robert F. Pitman, vice president and attorney in the Liberty National Bank and Trust Company Legal Division, who identified certain signature cards—exhibit #5; J. Floyd Askew, a professional appraiser, who appraised the listed property on April 1, 1965, as being worth $1,300.00 and stated its value was the same on the date the bail bond was executed; Robert R. Harbour the Foreman of the grand jury before which defendant was subpoenaed to appear; Richard Gibson a member of the same grand jury; and Curtis P. Harris the county attorney who assisted the grand jury.

Robert Harbour testified that at a grand jury proceeding he was the Foreman, and that defendant disclosed he and Valdhe Pitman had entered into contract for a bail bond business by which defendant held certain properties in trust, but that defendant owned no property himself. Mr. Richard Gibson, also a member of the grand jury, testified to the same effect.

Curtis P. Harris testified that defendant disclosed to the same grand jury that he did not own the real estate in question, but merely held it in trust for Pitman and that the defendant testified before the grand jury that the quit claim deed from O'Neal to Pitman was executed on the date shown, the 7th day of August, 1963, and delivered back to Mr. Pitman.

The four propositions of error in defendant's brief, urged by defendant on appeal are: (1) that the court erred in refusing to grant defendant's Motion for Continuance; (2) that the court erred in overruling defendant's Amended Motion to Quash and set aside the information; (3) that the court erred in refusing to grant the defendant a mistrial when the County Attorney, Curtis Harris, while on direct examination voluntarily placed the defendant's character at issue and further error of the court in refusing to strike voluntary statements made by Robert Harbour with reference to matters when he placed defendant's character at issue; and (4) that the trial court erred in giving Instruction No. 14, and refusing to give defendant's requested Instruction.

 Defendant's first assignment of error that the trial court committed reversible error in failing to grant his Motion for Continuance, is not properly before this Court, since neither the defendant's Motion, nor the court's ruling thereon, are contained in the casemade. This is also true in defendant's second assignment of error that the trial court erred in overruling the defendant's Motion to Quash the amended information since the record before us does not reflect the transcript of the testimony taken at the preliminary hearing.

In Cowan v. State, 5 Okl.Cr. 313, 114 P. 627, this Court said in Syllabus No. 3:

"If a defendant desires to bring a case here upon appeal, he must at least bring

---

3. This appears in the casemade as States Exhibit # 3, at page 38.

up enough of the proceedings of the lower court to enable this court to pass intelligently and safely upon the questions presented for decision."

And further, in Lem Sing v. State, 4 Okl. Cr. 544, 113 P. 204, this Court held in Syllabus No. 2:

"Matters occurring during the trial of a case which counsel desire to assign as error must appear by proper recitals in the casemade duly certified to as the law provides, independently of the motion for a new trial."

Defendant's third and fourth assignments of error will not be discussed herein for the reason such is not required. This matter is ultimately being determined on a Constitutional question, which is fundamental in nature and notwithstanding the fact that it is not treated in defendant's four propositions urged in his brief, the error is listed as his fifteenth assignment of error in his Petition in Error, being: "Error of the Court in permitting the County Attorney and Members of the Grand Jury to testify as to statements purportedly or allegedly made before said Grand Jury."

### II.

The fundamental question squarely facing this Court is:

Is a prospective defendant, or a target of an investigation, who is required to appear before the grand jury by subpoena duces tecum,—*who is not advised* of his constitutional rights against self-incrimination, who truthfully testifies before the grand jury thereby giving incriminating testimony, in the nature of a confession, concerning the commission of an earlier offense—immune from indictment and prosecution for the offense so confessed?

It is argued by the State that Title 22 O.S. § 342 authorizes the court in this case to require the testimony of the grand jury members concerning defendant's alleged crime of "perjury," committed when he executed the justification on the bail bond on January 8, 1964. The information charging defendant alleged, as follows:

"* * * [O]n the 8th day of January, A.D., 1964, in Oklahoma County defendant, * * * did then and there commit the crime of perjury by then and there wilfully, unlawfully, feloniously and falsely deposing, swearing and certifying upon his oath before Alene McGowan a duly appointed, qualified and acting Court Clerk for Wendell Foster, Justice of the Peace * * * after being duly and regularly sworn by the said Alene McGowan * * * the defendant E. W. O'Neal did then and there wilfully, unlawfully, feloniously and falsely testify, declare, depose and certify under such oath there he was then and there the owner of certain property to wit:

BLOCK 3, ARTESIAN SPRINGS SECOND ADDITION TO OKLAHOMA CITY, STATE OF OKLAHOMA

and did then and there wilfully, unlawfully, feloniously, and falsely testify he was worth double the sum to be secured, over and above all exemptions, debts and liabilities besides property exempt by law from execution * * *."

### III.

After reviewing the record of defendant's trial—excluding all the testimony complained of by defendant, i. e., the testimony of two members of the grand jury and that of the district attorney—it appears that the State failed to prove the charge of "perjury," without the grand jury testimony.

Defendant was charged with having made a false justification on a bail bond prior to the time the grand jury was called. That justification statement was the basis for this charge.

At defendant's trial the State introduced, as part of its case in chief, the quit claim deed which transferred the described property to the defendant. On the face of the deed, it clearly showed defendant to be the legal owner of the property. Also, one of the State's witnesses testified that the deed

has been properly recorded; and that defendant was shown to be the owner of record for the property listed, and there were no outstanding encumbrances against the property, at the time the bail bond was executed. Since no other deed to the property was on record, there seems little doubt that defendant was fully capable of encumbering the property as the legal owner. The questionable aspect offered at the trial concerning the bond and the property listed as security seemed to exist in the difference between the defendant's declared value of the property, and the value placed on it by the professional appraiser. But considering the fact that the professional appraisal was made one year and three months after the bond was executed, this difference loses some of its significance. In addition to the deed, the State introduced into evidence an agreement entered into between defendant and Mr. Valdhe Pitman for the operation of the "Oklahoma Bail Bonding" business. The agreement had been provided the grand jury when defendant was subpoenaed to testify before that quasi-judicial body. Defendant also produced certain other papers as required by the subpoena duces tecum. Consequently, as I now review the record before the Court, without the challenged testimony and evidence, the State failed to prove a charge of perjury against the defendant.

It appears from the record, the only testimony offered in the State's case in chief —which tended to show the defendant to be guilty of perjury—consisted solely of the grand jury testimony. Likewise, the questionable aspect of the delivery of the second deed returning the property back to Pitman was revealed by the grand jury testimony. The county attorney [prosecutor] testified to essentially the same facts revealed by the grand jury members, except that he placed special emphasis on the "trust agreement" created by the agreement establishing the bail bonding business, and the fact that defendant told the grand jury that he delivered the deed to Pitman on the date it was executed.[4]

At the conclusion of the State's case, the defendant demurred to the evidence, and moved for a directed verdict, both of which were denied by the trial court. Thereafter defendant did not testify in his own defense and offered the testimony of one witness, Mr. Valdhe Pitman. Mr. Pitman testified concerning his transfer of the real property and identified the original agreement as well as a second one entered into between him and defendant. On cross examination of Mr. Pitman, the prosecutor attempted to show that the deed from defendant to Mr. Pitman—which allegedly constituted a redelivery of the property to Pitman, after the business was dissolved—was actually delivered to Pitman immediately after the first one was recorded; and that the recording date shown on the second deed was not a true reflection of its delivery to Mr. Pitman. But, absent the testimony concerning what defendant might

---

4. Pertinent parts of that testimony were:

Mr. Robert Harbour, grand jury foreman, testified, in part: "He also stated to us to owned no property himself, but certain property had been deeded over to him by Pitman, strictly for use in the bail bond business." (C.M.–56); And, "He testified that Pitman had deeded this property to him for use in this bail bond business and then in return Mr. Pitman had requested that these pieces of property be conveyed back to him." (C.M.–57).

Mr. Richard Gibson, grand jury member, testified in part:

"Mr. O'Neal said it was his, but according to the contract he just held it in trust." (C.M.–78).

County Attorney Curtis Harris testified in part:

"He further testified he did not own the real estate, he merely held it in trust for Mr. Pitman; * * *." (C.M.–83).; And, "He further testified the quit claim deed from O'Neal to Pitman was executed on the date shown, the 7th day of August, 1963, and delivered back to Pitman." (C.M.–84); And, "He testified he did not own any other real estate other than the home he was living in, that he had no other property during the time he was in the bail bond business with Valdhe Pitman * * *." (C.M.–86).

have told the grand jury, the record does not reveal anything other than what Mr. Pitman testified to concerning the deed. At the conclusion of Mr. Pitman's testimony the defense rested.

Consequently, when the trial jury considered the grand jury testimony along with the other testimony and evidence offered, under the trial court's instructions the jury could reach no result, except to find the defendant guilty.

## IV.

Insofar as the State contends the statute authorizes the trial court to require the testimony of the grand jury members to reveal the defendant's testimony before the grand jury, an interpretation of the statute is required. Title 22 O.S. § 342 provides as follows:

"A member of the grand jury may, however, be required by any court to disclose the testimony of a witness examined before the grand jury for the purpose of ascertaining whether it is consistent with that given by the witness before the court, or to disclose the testimony given before them by any person, upon a charge against him for perjury in giving his testimony or upon his trial therefor."

▬ As this writer views the statute, it can be separated into three parts concerning a charge for perjury. The court can require the testimony of a member of a grand jury to ascertain whether the testimony given before the grand jury is consistent with that which the witness gives before the court; and secondly, to support a charge for perjury when a witness impliedly admits facts concerning perjury, or who testifies falsely before the grand jury; and thirdly, at the trial of the witness on the perjury charge. The significant phrase of the statute is that which reads: *"in giving his testimony."* It can only be understood to mean, in giving his testimony before the grand jury.

Clearly the first circumstance is not applicable in this case, because the witness [defendant herein] did not testify at his trial, and there was no call for rebuttal or impeachment testimony. However, this provision is intended to meet those situations wherein the witness testifies in a court—after having testified before the grand jury—and offers testimony different to that given before the grand jury. When such happens, the grand jury members may be required to testify in court to disclose the testimony, as it was related to the grand jury; or to impeach the witness. In both instances the witness was placed under oath prior to being examined; and consequently by relating different testimony, the witness committed perjury—either before the grand jury—or before the court. Such being true, the witness may then be charged, and tried, for having committed perjury; and at the trial, the court can require that the grand jury testimony be related.

The second part provision is intended to authorize the grand jury to return an indictment against a witness, whenever the grand jury concludes that the witness did not testify truthfully at the time he appeared before it; or, when the witness reveals certain facts [short of a confession] from which the jury may infer that the witness has otherwise committed perjury. This conclusion may be reached when the grand jury considers the testimony and evidence presented by all the witnesses examined, in comparison with the testimony given by the specific witness, and the grand jury therefore returns an indictment against the witness. And the third provision clearly authorizes the members of the grand jury to testify—when called upon by the court—at the perjury trial on the indictment.

Wharton's Criminal Law and Procedure, Vol. IV, § 1721, p. 496, states as follows:

"By decision or statute a grand juror or other person properly in the grand jury room has been permitted to disclose statements made by witnesses before such jury, when the testimony by the juror or other person is offered for the purpose of contradicting other statements made

by such witness before a different tribunal or authority, and when the witness has been impeached by proof of contradictory statements, his testimony before the grand jury is sometimes admitted to corroborate him. Statutes may be found expressly authorizing grand jurors to testify whether a witness' testimony before the grand jury was consistent with evidence given by him in court, and requiring grand jurors to disclose the testimony given before them by a person charged with perjury. Confessions or admissions of the commission of a criminal offense, *freely or voluntarily* made by a person when a witness before the grand jury, may subsequently be received as evidence against him when he is placed on trial." (Emphasis added.)

As I will attempt to point out later, the admitting of grand jury confessions or admissions of a criminal offense, as evidence against one tried, is not without limitations. In the instant case, this becomes a critical question.

Volume 29, AM, Jur.2d, § 612, p. 666, provides:

"It is now the preferable rule that *an admission* which is significantly incriminating, but short of a confession must, like a confession, have been made voluntarily and without improper inducement, to be evidence against the accused. All the reasons for excluding involuntary confessions apply to involuntary admissions as well." (Emphasis added.)

 An early case cited as the principal authority, that a grand juror may be called as a witness to reveal testimony given before the grand jury, is State v. Campbell, 73 Kan. 688, 85 P. 784, 9 L.R.A., N.S., 533 (1906). In that case, Campbell was convicted for having accepted a bribe to influence his official action as a member of the Kansas City Board of Education. The State introduced the testimony of four members of the grand jury to prove that Campbell testified before the grand jury, that he received $412.00 from a certain contractor in payment for a steam valve he sold to the contractor; and, that the sale was made after the Board contract had been entered into. The Kansas Supreme Court affirmed the conviction, holding that the admission of the grand jury testimony was not error. However, a careful reading of Campbell v. State, supra, reveals that the Court treated Campbell's testimony before the grand jury as an admission, and *not a confession*. Concerning the difference between an admission and a confession, the Court said in that case:

"When a person only admits certain facts from which the jury may or may not infer guilt, there is no confession. * * A confession of guilty is an admission of the criminal act itself, not an admission of a fact or circumstance from which guilt may be inferred."

Hence, the Kansas Supreme Court's clarification of the difference between an admission and a confession distinguishes that case from the instant case; except, as it concerns the general provisions permitting a grand juror to testify.

## V.

A careful re-examination of the grand jury testimony convinces this writer, that the defendant made a confession of his predicament; and hence, he left no need for an inference of his guilt whatsoever. The county attorney's testimony discloses that fact. The county attorney's testimony revealed that he promised the grand jury he would subsequently file an information charging defendant with perjury. Consequently at defendant's later trial, the members of the grand jury and the county attorney related defendant's "grand jury confession," as part of the State's case in chief.

The record before the Court fails to reflect, whether or not, the defendant was provided any warning against self-incrimination, or any promise of immunity. Neither is there any showing that the defendant invoked his privilege against self-incrimination. Instead, it is made to appear that defendant's testimony before the

grand jury was given freely and voluntarily. Whether or not the defendant was actually a target of the investigation, and a potential defendant to a perjury charge, could be answered by only one man, who did not provide the answer. Further, the answer is not contained in the record of trial. The county attorney was asked on redirect examination, "How did it come about, Mr. Harris? Did you issue a subpoena or did the Grand Jury ask you to issue a subpoena for Mr. O'Neal?" The county attorney answered, "Yes Sir." He was then asked, "And he appeared in response to the subpoena?" to which he answered, "Yes." The examiner continued, "And he produced certain records in response to the subpoena?" to which the witness replied, "Yes." "Among them was State's Exhibit No. 1, the contract?" to which the county attorney replied, "Yes." The assistant prosecutor then attempted to show the voluntariness of the grand jury testimony by asking, "The testimony about which you have testified, was voluntary testimony?" to which the witness [county attorney] responded, "Yes. Sir." (C.M. 91–92.)

Other than the foregoing testimony there seems to be nothing showing the voluntary nature of defendant's testimony. This writer is quite aware of numerous decisions which relate, that the fact a witness appears before the grand jury under subpoena does not show that the witness was "compelled," and does not prevent the testimony from being "voluntary." And such is without doubt true concerning an ordinary witness, but to declare such statement to be applicable to one who is being investigated, as a potential defendant, is nothing short of a "legal fiction." If such is declared to be the meaning of the statutes, then there is NO LEGAL REQUIREMENT for one to respond to a properly issued subpoena,

but it is elementary knowledge that such is not true. Likewise, to hold that testimony given by one under subpoena and who is a target of the investigation is not compelled testimony cannot be honestly supported. Had this defendant left, or attempted to leave the grand jury room, the county attorney would have had him arrested and he would have been cited by the court for contempt.[5] The second syllabus to United States v. Parker, 7 Cir., 244 F.2d 943, provides:

"A federal grand jury subpoena requiring one to testify at investigation of possible tax evasion in policy games 'compelled' the witness to testify within meaning of constitutional mandate that no one be 'compelled' to testify against himself. U.S.C.A.Const. Amend. 5."

It is this writer's present view, after considerable study and research, that defendant—under these circumstances—was protected by his constitutional guarantee against self-incrimination. It has long been held in other jurisdictions, that when the witness brought before the grand jury is the target of the investigation his constitutional privilege protects him, even though he fails to claim the privilege. The New York rule provides that the *constitutionally conferred privilege against self-incrimination* is violated even though the witness does not assert his privilege.[6] People v. Tomasello, (1967) 21 N.Y.2d 143, 287 N.Y.S.2d 1, 234 N.S.2d 190. In United States v. Edgerton, (1897), (D.C.Mont.) 80 F. 374, the court held that an indictment would be quashed where the defendant was required by subpoena to appear before the grand jury as a witness, and was sworn and examined and required to testify to material matters, without being informed or having knowledge that the grand jury had under consideration any matter involving a criminal charge against him, the court stating

---

5. See Blanton v. State, 31 Okl.Cr. 419, 239 P. 698 (1925). Blair v. United States, 250 U.S. 273, 281–282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919) [cited in United States v. Parker, 7 Cir., 244 F.2d 943].

6. See: Jones v. United States, (1964) 119 U.S.App.D.C. 284, 342 F.2d 863, 867, wherein four judges urged federal adoption of the New York Rule.

that where a witness was compelled to testify against himself, the injury inhered in the violence done to his rights.[7]

In State v. Corteau (1936) 198 Minn. 433, 270 N.W. 144, the information filed against defendant was set aside. The only difference between that case, and the instant one, seems to be that a complaint had been filed against Corteau in the municipal court prior to his being called before the grand jury. Explaining its holding that the information must be set aside, the Minnesota Court said:

> "The only apparent reason for taking evidence before the grand jury, as to facts upon the criminal charge unrelated to any other matters then before the grand jury, would be to determine whether an indictment should be found against the person so being examined. The conclusion reached is that, upon the record here presented, there was a violation of defendant's constitutional right not to be compelled to give evidence against himself."

The first paragraph to the syllabus to State v. Corteau, supra, provides:

> "Defendant could not be compelled to come before the grand jury and on oath either confess his guilt or commit perjury, and statements made by him under such circumstances were inadmissible in prosecution for perjury, being in violation of his constitutional right not to be compelled to testify against himself."

Other cases holding that a defendant's constitutional right against self-incrimination was violated in a similar manner are: State v. Naughton (1909) 221 Mo. 398, 120 S.W. 53; State v. Caperton (1918) 276 Mo. 314, 207 S.W. 795; United States v. Lawn (1953 DC NY) 115 F.Supp. 674; People v. Cochran (1924) 313 Ill. 508, 145 N.E. 207.

■ From this writer's subsequent review of the record before this Court, it appears that this defendant was called before the grand jury for the purpose of obtaining evidence on an anticipated charge, and that the defendant was the target of the investigation. Notwithstanding the fact that the grand jury might have been called for the purpose of inquiring into the bail bond business generally, when it became apparent to the grand jury that the witness was to become a defendant [assuming such fact was not known when the inquiry commenced], the witness should have been excused from further inquiry by the grand jury; or, at his trial before the testimony was admitted, the State should have made a positive showing that the defendant was fully advised of his constitutional rights against self-incrimination; and that he understandingly waived those rights. This would have clearly shown that defendant's testimony before the grand jury was given voluntarily and therefore admissible. Instead one draws the conclusion from the record, when the point of admissions was reached the grand jury was permitted to plunge further into the matter, thereby obtaining a full confession from the witness. However—under the facts herein presented—when the grand jury confession was obtained from the witness, the constitutional provisions against self-incrimination protected him in any subsequent trial concerning that testimony.

Had the defendant testified in his own defense in this case, and offered testimony different to his grand jury testimony, the grand jury members' testimony would have been admissible to refute defendant's different testimony; or had the defendant testified falsely before the grand jury, the grand jury testimony would have been clearly admissible on a charge premised on that false testimony, but neither of those situations existed in this case. Apparently the defendant testified honestly before the grand jury, because what he testified to was not the basis of this charge, as being false testimony. And, at his later trial he

7. See: John H. Wigmore's elementary statement of the principle of the privilege for self-criminating facts as stated in his Student's Textbook of the Law of Evidence, (1935) Foundation Press, Ch. XXXIV, pp. 370-371.

did not testify, so there was no testimony for the grand jury members to refute.

This Court recited in Layman v. Webb, (1960) Okl.Cr., 350 P.2d 323, 335, while discussing contempt charges arising out of the refusal of a grand jury witness to answer questions put to him, and his refusal to produce books and papers of a partnership before the grand jury, on the grounds of his constitutional privilege:

"The seizure or compulsory production of a man's private books or papers to be used in evidence against him is not substantially different from compelling him to be a witness against himself. Accordingly, the privilege of an accused not to be compelled to give evidence against himself in a criminal proceeding protects him from compulsory production of personal books or papers that contain evidence which would tend to incriminate him or expose him to a penalty or forfeiture. Such seizure or compulsory production is within the provisions providing that no person shall be compelled to testify against himself in a criminal cause."

The similarity between the instant case and the Layman case lies in the fact that defendant was subpoenaed to appear before the grand jury to testify, and was required to bring with him certain papers, including the deed and partnership agreement. Both the deed and the agreement were introduced into evidence against the defendant. See also: Rice v. State Board of Medical Examiners, (1953) 208 Okl. 440, 257 P.2d 292, 335.

The Layman case continues, quoting from Boyd v. United States, (1886) 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, 752:

"* * * A perusal of the decisions of the supreme court shows that no constitutional right has been subjected to more jealous care than that which protects one accused of crime from being compelled to give testimony against himself. The right to such protection existed at common law, and was carried into the constitution, that the citizen might be for-ever protected from inquisitorial proceedings compelling him to bear testimony against himself of acts which might subject him to punishment * *.

"It may be, it is the obnoxious thing in its least repulsive form, but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and silent deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be legally construed. * * *"

It is also observed in Perry v. State, 84 Okl.Cr. 211, 181 P.2d 280 (1947), wherein Perry had been called as a witness at the preliminary hearing for one, Franklin Clifford. Clifford was charged with the crime of assault with intent to kill, having shot both Perry and Mrs. Clifford. In response to subpoenas issued by both the prosecution and the defendant, Perry attended the preliminary examination and testified. He was asked if he had ever had sexual intercourse with Mrs. Clifford and Perry stated that he had on two different occasions. Later the charges against Clifford were dismissed, but based upon Perry's testimony Clifford demanded that adultery charges be filed against Perry and Mrs. Clifford. On motion of the county attorney, the charges against Mrs. Clifford were dismissed, but Perry stood trial and was convicted.

In its decision, this Court cites Article 2, § 21, Oklahoma State Constitution, which provides, in part:

"* * * no person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided; * * *."

which was construed with the provisions of Article 2, § 27, which provides, that any person having knowledge to establish the guilt of another person, or corporation, charged with a crime shall not be excused from giving testimony or producing evidence, when legally called upon to do so, on the ground that it may tend to incrimi-

nate him, and concludes with the following:

"* * * but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence."

This Court's opinion in the *Perry* case, supra, recites:

"The answer made by the defendant in response to the questions of Clifford's attorney at the preliminary examination of Clifford *constituted a confession of* defendant Perry's guilt of the crime of adultery." (Emphasis added.)

Thereafter this Court decided:

"It is our conclusion that this statement of Clifford's should not have been admitted in evidence against him and was the major factor in causing the jury to return a verdict of guilty."

In the *Perry* case, supra, the Court quotes extensively from Scribner v. State, 9 Okl. Cr. 465, 132 P. 933, 939, which includes the statement:

"[I]f a witness answers questions in such a manner as to incriminate himself he should not be granted immunity unless, in the language of the constitution, he has been *'compelled to give evidence'* which incriminates him and has 'so testified.'" (Emphasis added).

Thereafter, the Court quotes from Tague v. State, 15 Okl.Cr. 55, 174 P. 1106, which provides that one must have claimed his privilege of silence, and be denied that privilege by the court, and forced to testify, in order to secure immunity under Article 2, § 27. And following that authority, the Court cites Ex parte Meadows, 70 Okl.Cr. 304, 106 P.2d 139; and Ex parte Bradley, 72 Okl.Cr. 107, 113 P.2d 611, and states the rule thusly:

"'Courts indulge every reasonable presumption against a waiver of fundamental constitutional rights, and do not presume acquiescence in their loss' [; and the question as to] 'whether one accused of crime has waived his right * * * must depend in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'"

Perry v. State, supra, correctly states the law concerning an ordinary witness, who appears under subpoena and testifies. See also: Cortez v. State, Okl.Cr., 415 P.2d 196, 199 (1966). However, when the witness is the target of the grand jury investigation, he is entitled to be warned of his right against self-incrimination. Otherwise the confession becomes involuntary and hence inadmissible at his trial.[8] It appears that Perry's confession at the preliminary examination of Clifford in Perry v. State, supra, became involuntary for the reason he was "compelled" to answer defense counsel's question, without being forewarned. In defendant's case herein, there is little doubt in this writer's mind that defendant was under the same compulsion [felt by Perry], when he truthfully testified before the grand jury. Hence, defendant's grand jury confession did not meet the voluntary test set forth in Lyons v. State, 77 Okl.Cr. 197, 138 P.2d 142, 140 P.2d 248; Id., 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481, as cited in Perry v. State, supra. Such being true, the grand jury testimony was inadmissible in this case, especially since defendant did not testify.

Defendant's constitutional rights were violated, when the grand jury testimony was admitted, thereby placing the improperly obtained confession before the trial jury. Judge Frank's statement in United States v. Scully, 2nd Cir., (1955), 225 F.2d 113, 117, is most pertinent here: [Citing: Boyd v. United States, supra.]

"The Supreme Court has said that the constitutional privilege against self-incrimination and the constitutional privilege of immunity from an unreasonable search and seizure are in the nature of twins."

8. See: Coleman v. State, Okl.Cr., 104 P.2d 1004, mod. 70 Okl.Cr. 246, 105 P.2d 431.

And, notwithstanding the fact that United States v. Scully, supra, holds, that the MERE POSSIBILITY that the witness may later be indicted furnishes no basis for requiring that he be advised of his rights under the Fifth Amendment, when summoned to give testimony before a grand jury, it is interesting to observe that Circuit Judge Medina states in his opinion:

"It is at least clear that a prudent prosecutor, to forestall the possibility of error, will in such cases give a warning. Indeed, one would suppose that, as a matter of ethics or fair play or policy, a prosecutor would in all cases refrain from calling as a witness before a Grand Jury any person who is *de jure* or *de facto* an accused."

Judge Medina relies on the fact that the district attorneys of his circuit, at least, follow that practice. But there seems to be little room in this case for the supposition, referred to by the Honorable Circuit Judge.

We observe also, in his concurring opinion to the *Scully* case, supra, Judge Frank states at page 116:

"Several state and federal courts have gone further in holding or indicating *that warning is necessary* if it unmistakably appears that, when a witness is under subpoena before a grand jury, the prosecutor then intends to seek the witness' indictment." (Emphasis added.) [9]

According to the United States Supreme Court decisions in Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); and Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); the grand jury proceeding can be a critical stage of a trial and consequently when one suspected of having committed an offense is alleged to have waived his constitutional rights, such allegation must be supported with more than a presumption. This is especially true of defendant's constitutional right against self-incrimination.

## VI.

■ It is clear that an ordinary witness before a grand jury must give testimony except where it might incriminate him for some past misdeed, but he cannot refuse to testify on the grounds that if he commits perjury, he would be subjected to incrimination. All witnesses as such must give testimony regarding any matter of which they have knowledge, which testimony is not privileged and is relevant to the matter under investigation by the grand jury, except where the testimony might tend to incriminate the witness for some past act.

■ However, as the facts of this case reveal, one being investigated by the grand jury is not just a witness and cannot be treated as such. The target of a grand jury investigation is not an ordinary witness; he is suspect and is entitled to be warned of his right against self-incrimination; and unless the witness is so warned and advised of his constitutional rights related thereto, any testimony revealed by him before the grand jury may not be used against him to prosecute a later charge arising out of that testimony; however, after having been advised of his constitutional right against self-incrimination the witness may waive that right, and testify, the same as he can waive any other constitutional right.

■ In the case at bar, we conclude that the defendant was the subject of investigation of the grand jury and therefore the "target" thereof; and by virtue of the subpoena duces tecum he was compelled to testify; and insofar as there was no showing in the record that the defendant was

9. Citing: United States v. Edgerton, D.C. Mont., 80 F. 374; People v. Gillette, 126 App.Div. 665, 111 N.Y.S. 133; People v. Luckman, 164 Misc. 230, 297 N.Y.S. 616, 618–619; People v. Rauch, 140 Misc. 691, 251 N.Y.S. 454, 456–457; People v. Bermel, 71 Misc. 356, 128 N.Y.S. 524; State v. Allison, 116 Mont. 352, 153 P.2d 141; State v. Smith, 56 S.D. 238, 228 N.W. 240; State ex rel. Poach v. Sly, 63 S.D. 162, 257 N.W. 113, cf. Marcello v. United States, 5th Cir., 196 F.2d 437, 441; Maffie v. United States, 1 Cir., 209 F.2d 225, 228–229.

either advised of his constitutional right against self-incrimination; or that he knowingly waived that right in such a manner as to cause his testimony to have been voluntarily given; or that he was offered immunity from prosecution for giving his testimony; we must conclude that defendant's constitutional rights were violated when the grand jury testimony was introduced at his trial for perjury.

As the late Judge Powell recited in Layman v. Webb, supra:

"[I]n the United States, we cannot bypass Constitutional safe-guards and take short-cuts, in seeking out those whom it may be thought have violated the law. Ours is a government of laws and not of men."

We are therefore of the opinion defendant's conviction in Oklahoma County District Court case number 31054 for the charge of perjury should be, and the same is hereby, reversed and remanded with instructions to dismiss the charge.

BUSSEY, Judge (dissenting).

I must respectfully disagree with the opinion rendered by Judge Brett insofar as he concludes:

(1) that the testimony of O'Neal, given before the grand jury, was coerced;

(2) that O'Neal was the target of the grand jury investigation; and

(3) that the failure to advise the defendant of his constitutional rights against self-incrimination prior to the taking of his testimony before the grand jury, bars the admission of his grand jury testimony on his subsequent trial for Perjury.

In the absence of some testimony supporting my colleagues conclusions, I believe it is as reasonable to assume [1]:

(1) that the testimony of the defendant given before the grand jury was freely and voluntarily given;

(2) that the grand jury investigation was a general investigation of the bail bonding business and the defendant was not the "target" of the investigation; and

(3) that the failure to give a witness appearing before the grand jury the Miranda warning does not *ipso facto* bar the admission of such testimony in a subsequent trial for Perjury.

The first two conclusions are conclusions of fact to be adduced from an examination of the record, but the third conclusion is a conclusion of law in which I rely on the decision rendered in Robinson v. United States, 9 Cir., 401 F.2d 248, wherein the Court, speaking through the Honorable Judge Warren Madden had this to say:

"In the case of United States v. Scully, 225 F.2d 113, 116, C.A.2 (1955) Judge Medina wrote:

'* * * the mere possibility that the witness may later be indicted furnishes no basis for requiring that he be advised of his rights under the Fifth Amendment, when summoned to give testimony before a grand jury.'

We agree with the quoted statement. It was cited with approval in United States v. Parker, 244 F.2d 943, C.A. 7 (1957), cert. den. 355 U.S. 836, 78 S.Ct. 61, 2 L.Ed.2d 48.

We do not agree with the defendant's contention that a witness, in court pursuant to a subpoena, is under compulsion similar in all respects to the compulsion of being in the custody of police as a suspect upon whom the investigation has focused. True, there is an important dictum to the effect that in certain circumstances such as that of an illiterant or ignorant witness who gives self-incriminating testimony, that testimony may not later be used to convict him of the crime to which his self-incriminating

1. Particularly is this true when the admissibility of the "confession" is not attacked in the trial court on the grounds that it was coerced or that the defendant was not advised of his constitutional rights

testimony related. See United States v. Orta, 253 F.2d 312, C.A. 5 (1958) and see Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951) for the usually applicable rule that the privilege of a witness not to incriminate himself is waived if not claimed."

In the instant case the defendant was an intelligent man whose business partner in the bail bonding business had practiced extensively in the defense of criminal cases. I do not believe it is unreasonable to assume that Mr. O'Neal was thoroughly aware of his privilege against self-incrimination prior to his appearance before the grand jury.

I would affirm the conviction; moreover, I specifically dissent on the instructions directing the trial court to enter an order dismissing the case, for it is possible that evidence exists independent of the defendant's grand jury testimony, which would independently support the charge of Perjury.