Robert Eugene **ROSTECK**, Appellant,

v.

**STATE of Oklahoma, Appellee.**

No. F–85–736.

Court of Criminal Appeals of Oklahoma.

Jan. 12, 1988.

Johnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Wellon B. Poe, Jr., Legal Intern, Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

The appellant, Robert Eugene Rosteck, was tried by jury in Tulsa County District Court, Case No. CRF–84–4860, and convicted of Assault and Battery with Intent to Kill (21 O.S.1981, § 652) (Count 1); Attempted First Degree Rape (21 O.S.1981, §§ 42, 1114–1115) (Count 2); Forcible Sodomy (21 O.S.Supp.1982, § 888) (Count 3); Robbery with a Firearm (21 O.S.Supp.1982, § 801) (Count 4); and Kidnapping (21 O.S. 1981, § 741) (Count 5). Appellant was charged with After Former Conviction of a Felony on each of the above five (5) counts (21 O.S.1981, § 51). Trial was held before the Honorable Donald C. Lane, District Judge. The jury set punishment respectively at one hundred (100) years, seventy-five (75) years, one hundred (100) years, fifty (50) years, and one hundred (100) years imprisonment. The trial court sentenced the appellant in accordance with the jury's verdict and ordered the times to be served consecutively. We affirm in part and reverse in part.

At approximately 10:30 a.m. on December 14, 1984, a man identified as appellant entered Robey's Laundromat to pick up some clothes he had left to be cleaned. He took the clothes to a car, then re-entered the laundromat and held a gun to the side of D.B., the victim, ordering her into a back room. He then told her to remove her clothing. She removed her sweater, then attempted to remove her jeans, but was unable to do so, as she could not pull them off over her boots. After appellant became aware that she could not remove her jeans, he ordered her to get on her knees, pulled out his penis and ordered her to lick it. After the oral sex act was completed, D.B. stood up, and was then stabbed in the neck and abdomen by appellant. D.B. fell backward, and appellant walked out of the room. D.B. heard the cash register open; then appellant returned, telling her to get dressed. He then pointed his gun at her, ordered her outside and ordered her into the trunk of his car, telling her he would take her to a hospital, then surrender himself to the police. As she walked by the cash register, D.B. noticed that the cash register drawer had been emptied, and that her billfold was missing. D.B. remained in the trunk for approximately two hours before appellant stopped driving. He started again, and drove for another two hours before stopping for some gasoline. D.B. pounded on the trunk in an attempt to get help. Appellant then drove for another hour. At this stop, D.B. again yelled for help, and thought she heard someone respond. The car was in motion, drove a few minutes, and then stopped. The trunk was opened, and then D.B. saw a Missouri state trooper. D.B. was taken to the hospital, where she remained for ten (10) days.

For his first assignment of error, appellant alleges that the trial court erred in overruling his motion to suppress a statement he made to Missouri law enforcement officials. The transcript reveals that appellant was read his *Miranda* rights when he was apprehended, before any questioning was begun, and he indicated he understood his rights. The *Miranda* rights were read to appellant again at the Missouri Highway

Patrol zone office. Additionally, appellant himself read the rights at that time, and indicated he understood them. He did not indicate that he wanted to talk or that he wanted an attorney present, but he did sign a waiver form. Appellant was read his rights for a third time at the sheriff's office in LeClede County, Missouri. Appellant answered that he did not need an attorney, and would talk to a deputy. Several minutes later, appellant confessed to committing the acts.

■■■■ When an accused has been fully advised of his constitutional rights and it appears that he has understood those rights, it can be assumed that any incriminating statements he makes thereafter constitute a waiver. *Lee v. State,* 560 P.2d 226, 233 (Okla.Crim.App.1977); *Grigsby v. State,* 496 P.2d 1188, 1193 (Okla.Crim.App. 1972). The law does not require that an explicit statement of waiver is necessary to support the finding of a waiver. *Browning v. State,* 648 P.2d 1261, 1267 (Okla. Crim.App.1982). Inasmuch as the evidence is uncontradicted that appellant was advised of his rights and waived them, the response to questioning by law enforcement officers was properly admitted. This Court will not disturb the trial court's ruling permitting the introduction of a confession if it is supported by sufficient evidence that appellant knowingly and intelligently waived his rights and understood the consequences of his waiver. *Chatham v. State,* 712 P.2d 69, 71 (Okla.Crim.App. 1986). This assignment of error is without merit.

Appellant also asserts that the trial court erred in the second stage by admitting a judgment and sentence containing a crime for which appellant was never convicted. The trial court allowed into evidence a certified copy of a judgment and sentence from Illinois reflecting that appellant had been convicted after pleading guilty to a charge of indecent liberties with a child. Contained in that judgment and sentence is a notation that a second count was dismissed. Nowhere is there a reference to the nature of the second charge, however, but only that is was dismissed.

■■■■ The State may prove a defendant's prior conviction by introducing a certified copy of the judgment and sentence. *Sanders v. State,* 706 P.2d 909, 911 (Okla. Crim.App.1985). Regarding the unadjudicated charge, we note that the trial judge took great care to delete any reference to such charge on the accompanying docket sheet, and the jury was unaware of the nature of the charge from the judgment and sentence. We note that, while the sentences are severe, they are within the statutory guidelines established for convictions involving the enhancement statute. *See* 21 O.S.1981, § 51. *See also Geary v. State,* 709 P.2d 690, 695 (Okla.Crim.App. 1985). Appellant has therefore failed to show that he was prejudiced by the reference to a dismissal of a second charge. *See Mills v. State,* 594 P.2d 374, 382 (Okla. Crim.App.1979).

■■■■ Regarding appellant's assertion that the State did not prove appellant's Illinois conviction was final, this Court has held that when the State makes a prima facie showing of prior convictions, the defendant has the burden of showing defects in that judgment and sentence. *Larson v. State,* 700 P.2d 220, 222 (Okla.Crim.App.1985); *Hendricks v. State,* 698 P.2d 477, 481 (Okla.Crim.App.1985). Here, appellant did not present any evidence to show that the judgment and sentence was not final. This contention is without merit.

Appellant next claims that the trial court erred by overruling his motion for a directed verdict. Appellant claims that there was insufficient evidence as a matter of law to convict him of attempted rape. A look at the evidence reveals that appellant told the victim to remove her clothing. She was unable to remove her jeans over her boots. There was no other evidence indicating that appellant contemplated rape.

■■■■ It is true that where there is competent evidence that reasonably supports the crime charged, a demurrer should not be sustained. *Corley v. State,* 713 P.2d 12, 13 (Okla.Crim.App.1985); *Clayton v. State,* 695 P.2d 3, 5–6 (Okla.Crim.App.1984). Such evidence does not exist here, and therefore the trial court improperly overruled the motion for a directed verdict.

The legislature has defined "attempt" as follows:

A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:

(a) purposely engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; or

(b) when causing a particular result in an element of the crime, does anything with the purpose of causing or with the belief that it will cause such result, without further conduct on his part.

21 O.S.1981, § 44. This Court has long interpreted this statute as requiring three elements: the intent to commit the crime; the performance of some act toward its commission (commonly called the commission of some overt act); and the failure to complete or consummate the crime. *Dunbar v. State*, 75 Okl.Cr. 275, 131 P.2d 116, 122 (1942). It is equally settled that the overt act must be more than mere preparation or planning the crime. "It must be such act or acts as will apparently result, in the usual and natural course of events, if not hindered by extraneous causes, in the commission of the crime itself." *Id.*

 We cannot say that the facts presented would pass scrutiny under the statute or this Court's interpretation of it. Certainly further conduct would have been required by appellant before the rape could have occurred. Nor can we say that the "usual and natural course of events" based on these facts would have been rape. Accordingly, the trial court erred in overruling appellant's motion for a directed verdict concerning the attempted rape charge.

Accordingly, appellant's conviction for attempted rape is REVERSED with instructions to DISMISS. The other assignments of error are without merit, and those convictions are AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.