**Carol Ann PIERCE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–92–793.**

Court of Criminal Appeals of Oklahoma.

July 5, 1994.

---

W.B. Ward, Jr., Ada, for appellant at trial.

Chris Ross, Asst. Dist. Atty., Ada, Mike Sherrod, Asst. Dist. Atty., Wewoka, for the State at trial.

Bill Zuhdi, Zuhdi Law Offices, Oklahoma City, for appellant on appeal.

Susan Brimer Loving, Atty. Gen., Diane L. Slayton, Asst. Atty. Gen., Oklahoma City, for appellee on appeal.

### *OPINION*

LANE, Judge:

Appellant, Carol Ann Pierce, was convicted of Conspiracy to Commit Murder and First Degree Murder, following a jury trial in the District Court of Pontotoc County, Case Number CRF–91–50, before the Honorable G.C. Mayhue. After returning a verdict of guilty, the jury recommended that Appellant be sentenced to ten (10) years for the Conspiracy and life in prison without possibility of parole for Murder. She has challenged her convictions and sentences raising three allegations of error: that the trial court erred in admitting her tape-recorded statement; that the prosecutor's improper comments affected her right to a fair trial; and that the trial court erred in denying her demur to the evidence. We do not find that any error has occurred which requires relief from this Court. The judgment and sentence of the trial court is **AFFIRMED.**

Appellant's husband, Preston Pierce (Preston) was murdered by Ronald Kellams (Kellams) and Tommie Rowland (Rowland). Appellant, her mother, Judy Harlin (Harlin),

Kellams and Rowland were charged with the murder, and Kellams agreed to testify in exchange for a plea of life without parole.

Kellams was Harlin's live-in boyfriend, and testified at trial he was contacted by Appellant to kill her husband. Appellant told Kellams her husband beat her and was cruel to her, and she wanted him killed. Kellams testified he talked to Appellant over a dozen times concerning the murder. Kellams then contacted his cousin, Rowland, to assist with the killing. Rowland agreed to do it for half of forty thousand dollars ($40,000.00) which Appellant agreed to pay to the two men. (Kellams was aware that Appellant and Preston had over ninety thousand dollars ($90,-000.00) in a joint account.)

Harlin gave Kellams one hundred dollars ($100.00), which she said came from Appellant. Appellant also gave Kellams a check for four hundred dollars ($400.00), which Harlin cashed after Kellams had difficulty cashing it. Harlin then gave the $400.00 to Kellams. Appellant and Harlin wanted the killing done quickly.

On November 2, 1990, Kellams talked to Preston about going to look at a hunting lease the next day. The day of the murder, Appellant called Kellams to tell him Preston had left the house and did not take a gun with him. Kellams then called Rowland, and was told by Rowland's girlfriend that he was not there. Kellams attached a .22 automatic pistol to his leg with an Ace bandage and went to the lease with Preston. Rowland met the two at the lease. Kellams and Rowland pretended to hunt for a while and while Preston was looking away Kellams shot him twice. Rowland, worried Preston might still be alive, shot him under the chin. The men picked up the spent shells, threw the gun into a farm pond, buried Preston, drove his blazer away from the scene and ditched it. Kellams called Appellant and told her Preston was dead.

Sometime later, Kellams, Rowland, and Linton Pitts (Pitts) agreed to go into the marijuana-growing business. During one of their discussions, Kellams and Rowland began to talk about Preston's murder in front of Pitts. Pitts informed the police, who dis-

covered the body. Neither Kellams or Rowland ever received the promised $40,000.00 from Appellant.

Prior to her arrest, during an interview in her attorney's office and in his presence, Appellant spoke with law enforcement personnel. She was advised of her *Miranda* rights by both her attorney and the law enforcement personnel although she had not been arrested at that time. Unbeknownst to Appellant or her attorney, the conversation was recorded by the officers. Neither Appellant nor her attorney inquired as to whether the conversation was being recorded, and they were not told of the recording. Likewise, the officers were unaware that Appellant's attorney was also recording the conversation. Appellant denied participation in and/or any knowledge of her husband's death, and told police she thought Preston was simply going to be kidnapped and beaten.

Appellant testified at trial and was convicted on both counts.

■ As her first allegation of error, Appellant claims the trial court erred in admitting her tape-recorded statement into evidence as the police used deception, fear, intimidation and coercion to elicit the statement, notwithstanding the presence of her attorney. We disagree.

The cases cited by Appellant all go to the voluntary and knowing waiver of *Miranda* rights when an accused has confessed. The State is correct in noting that there was no confession here, therefore the question of waiver, voluntariness, coercion, etc. is inapposite. Both parties seem to miss the mark. The real inquiry here is whether there was some reasonable expectation on the Appellant's part that the information provided to the officers would not be used against her in the event she was arrested and charged with the crime.

■ As we noted in *Arnold v. State*, 803 P.2d 1145, 1151 (Okl.Cr.1990) an individual has no constitutionally legitimate expectation that the person to whom he speaks will not relate the conversation to authorities either by repetition or by recording of the conversation. (Citing *United States v. Caceres*, 440 U.S. 741, 750–51, 99 S.Ct. 1465, 1170–71, 59 L.Ed.2d 733 (1979); *United States v. White*, 401 U.S. 745, 749–51, 91 S.Ct. 1122, 1124–25, 28 L.Ed.2d 453 (1971).) Appellant's claim now that she never expected the information given to officers during the interview in her attorney's office to be used against her ignores the very nature of the interview process and the *Miranda* warnings given by both the officers and Appellant's trial counsel. The real complaint here is that Appellant made the statement, and now wishes she hadn't. That alone is insufficient to exclude it from evidence.

■ Unlike the *Arnold* case, there is no dispute here that the statement was voluntarily given. Trial testimony revealed the meeting with police was set up by Appellant's counsel, Mr. Landrith (Tr.Vol. II, p. 353–54), and was actually done at Appellant's request (Tr.Vol. III, p. 521). As Appellant agreed to talk to police, and especially since that conversation took place in her counsel's office and presence, Appellant's argument of coercion, intimidation, and fear is unsupported by the facts. Her claim of deception, wherein she claims the officers lied to her, is likewise irrelevant. Appellant cites no authority for the position that she has a right not to be lied to, and, on cross-examination, the officers in question admitted not only that they lied to Appellant but they were trained to do so (Tr.Vol. II, p. 424). Counsel's identical objection and argument at trial was properly overruled. (Tr.Vol. II, p. 426) The trial court correctly found that counsel was present and able to advise Appellant had the interview deteriorated to threats and coercion. This argument is without merit.

■ Appellant next complains of prosecutorial misconduct in the form of improper comments. The comments Appellant questions were (1) the State's belief that Appellant was guilty of the crimes charged, (2) referring to the victim in an alleged attempt to invoke sympathy, (3) alleged improper expression of personal opinion as to the credibility of the evidence presented, and (4) an alleged comment concerning Appellant's failure to testify and the exercise of her right to remain silent. Appellant alleges the cumula-

tive nature of the comments constitutes reversible error. We do not agree. Of the comments identified, none but the one concerning Appellant's failure to testify drew a contemporaneous objection at trial and on appeal, our review of the comments indicates that none of those rise to the level of fundamental error and therefore are waived. *Hunt v. State,* 793 P.2d 1366 (Okl.Cr.1990); *Quilliams v. State,* 779 P.2d 990 (Okl.Cr. 1989); *Thomason v. State,* 763 P.2d 1182 (Okl.Cr.1988); *Smith v. State,* 737 P.2d 1206 (Okla.Cr.1987); *cert. denied* 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987); *Plunkett v. State,* 719 P.2d 834 (Okl.Cr.1986); *Tucker v. State,* 620 P.2d 1314 (Okl.Cr.1980). *Shultz v. State,* 811 P.2d 1322 (Okl.Cr.1991).

With respect to the comment concerning the State's belief that Appellant was guilty of the crime charged, the reference made was to the evidence presented and the inferences to be drawn therefrom. More importantly, the comment was made in rebuttal to defense counsel's statement that Appellant was "sitting here because three officers ganged up on ..." her in order to coerce a statement from her. Unlike the cases cited by Appellant, there is nothing in this case to suggest that the trial court considered Appellant guilty and conveyed that information to the jury, nor does the comment rise to the level of prosecutorial testimony. To the contrary, the record is replete with references and admonishments to the jury to consider only the evidence presented, and nothing more, in making a determination of Appellant's guilt or innocence. Likewise the jury instructions were quite complete and explicit in outlining the requisite elements and burdens of proof.

The comment concerning the victim, Preston Pierce, was also unobjected to at trial. However, unlike the comments in *Tobler v. State,* 688 P.2d 350, 354 (Okl.Cr.1984), there was no repeated reference to the victim, no constant reference to his age, the fact that he had children and family members who would never see him again, no testimony from family members as to the toll his death took on their lives, etc. In fact, the only reference to the victim in this case, other than the limited testimony of the medical examiner and Kellams's testimony about kill-

ing him, was the one statement made during closing in response to defense counsel's request that the jury sympathize with Appellant and place themselves in her position. While it would have been better had the comment not been made, we find it does not rise to the level of fundamental error.

Appellant's next claim is that the State's argument is replete with references as to Appellant as a liar and endorsement of the State's chief witness as believable. The comments, once again, were not objected to at trial. More importantly, the comments made by the State were in response to defense counsel's statements as to the unbelievability of the State's witnesses and the State's alleged failure to present sufficient evidence to support a guilty verdict. The references to Mr. Kellams's testimony were preceded by the State reciting facts in evidence which supported Kellams's testimony and refuted Appellant's comments concerning her innocence and lack of involvement with Kellams. We find no reversible error here.

The last complaint alleges the State improperly commented on Appellant's right to remain silent. Appellant testified at trial and on direct examination alleging she was coerced and threatened into giving a statement to the police, and that she had been lied to during the interview concerning her status as a suspect and the State's willingness to make a deal with her. The question asked, and the response solicited by the State, was used to rebut Appellant's testimony that she was coerced into giving a statement and that the State reneged on a deal it made with her to reduce charges in exchange for friendly testimony. Any error was invited by Appellant when she testified she was misled by the State during her interview. Appellant's second proposition presents no reversible error.

Appellant's final contention is the trial court erred in overruling her demurrer to the evidence as to both the conspiracy and the murder charges. Appellant is correct in that the test for sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential

elements of the crime charged beyond a reasonable doubt. *Jones v. State,* 772 P.2d 922 (Okl.Cr.1989), *Riley v. State,* 760 P.2d 198, 199 (Okl.Cr.1988). Likewise, the trial court must overrule a criminal defendant's demurrer to the evidence where competent evidence has been presented that reasonably supports the crimes charged (*Morrison v. State,* 792 P.2d 1189, 1193 (Okl.Cr.1990)) and the reviewing court must then accept all reasonable inferences and credibility choices that tend to support the trier of fact's verdict (*Washington v. State,* 729 P.2d 509, 510 (Okl. Cr.1986)).

The evidence presented, in addition to Kellams's testimony as a co-conspirator, was sufficient to corroborate his testimony and support the jury's verdict. The trial court's ruling as to Appellant's demurrer was proper. The State presented phone records, a cancelled check, and, most damaging of all, Appellant's admission against interest wherein she admitted that someone (later identified as Kellams) was supposed to kidnap and beat up her husband, although she denied knowing that he was going to be killed. (Vol. III, p. 523–24) Appellant also admitted to calling her mother every time her husband left their house alone so that "they" (later identified as Kellams and "whoever he was supposed to have help him") could find the victim alone. (Vol. III, p. 526).

After review of the errors alleged by Appellant, we are unable to conclude that any error has occurred which requires either reversal or modification of Appellant's sentence. Accordingly, the judgment and sentence is **AFFIRMED.**

JOHNSON, V.P.J., and STRUBHAR, J., concur.

LUMPKIN, P.J., and CHAPEL, J., concur in result.

LUMPKIN, Presiding Judge, concurring in results:

I concur in the results reached by the Court and join in the Courts decision to affirm the judgment and sentence. While I agree with the analysis set forth by the Court as to Propositions II and III, I do not join in the analysis forming the basis of the denial of the allegation of error in Proposition I.

The focus of Appellant's first proposition of error is, in fact, that the statements given were involuntary statements. Therefore, the Court's statement "[U]nlike the *Arnold* case, there is no dispute here that the statement was voluntarily given", does not correctly state the nature of the issue raised by the Appellant. I agree with the Court the facts reveal a lack of any question regarding the voluntariness of this statement, however, the voluntariness is still contested by the Appellant and upon which she bases this allegation of error.

I agree the requirements of a *Miranda* warning were not applicable to this noncustodial interrogation, which was arranged by Appellant and her attorney. See *Miranda v. State of Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, the issue of voluntariness must be addressed regardless of whether the statement is an "admission" or a "confession". This Court has previously defined the difference between an admission and confession as follows:

When a person only admits certain facts from which the jury may or may not infer guilt, there is no confession.... A confession of guilty is an admission of the criminal act itself, not an admission of a fact or circumstance from which guilt may be inferred. *Lewis v. State,* 493 P.2d 91, 94 (Okl.Cr.1991); *O'Neal v. State,* 468 P.2d 59, 66 (Okl.Cr.1970) (citing *State v. Campbell,* 73 Kan. 688, 85 P. 784 (1906)).

However, based on the facts presented in this case, the characteristics which distinguish between an admission and a confession is a distinction without a difference. This Court said in *O'Neal:*

It is now the preferable rule that an admission which is significantly incriminating, but short of a confession must, like a confession, have been made voluntarily and without improper inducement, to be evidence against the accused. All the reasons for excluding involuntary confessions apply to involuntary admissions as well.

The fact that an appellant's admissions were obtained by individuals who did not adhere to some type of "Marquis of Queensberry rules" does not warrant automatic reversal. The Fifth Amendment of the United States Constitution is not concerned with "moral and psychological pressures to confess emanating from sources other than official coercion." *Oregon v. Elstad,* 470 U.S. 298, 305, 105 S.Ct. 1285, 1290, 84 L.Ed.2d 222 (1985). The Court went further and stated:

> Indeed, far from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable.... Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions. *Id.* (quoting *United States v. Washington,* 431 U.S. 181, 187, 97 S.Ct. 1814, [1818], 52 L.Ed.2d 238 (1977)).

Prior to the Supreme Court's decision in *Miranda,* the admissibility of an accused's in-custody statements was judged solely by whether they were "voluntary" within the meaning of the Due Process Clause.

> If a suspect's statements had been obtained by 'techniques and methods offensive to due process', *Haynes v. Washington* [373 U.S. 503], at 515 [83 S.Ct. 1336 at 1344, 10 L.Ed.2d 513 (1963)], or under circumstances in which the suspect clearly had no opportunity to exercise 'a free and unconstrained will,' *Id.,* at 514 [83 S.Ct. at 1343], the statements would not be admitted. *Elstad,* 470 U.S. at 304. [105 S.Ct. at 1290].

Where an unwarned statement is preserved for use in situations that fall outside the sweep of the *Miranda* presumption, "the primary criterion of admissibility [remains] the 'old' due process voluntariness test." *Id.* 470 U.S. at 307–08, 105 S.Ct. at 1292.

Based on the facts presented in this case, *Miranda* safeguards clearly did not apply. Appellant did not, and could not, seriously argue she was in custody. Police were present in Appellant's lawyer's office, with both Appellant and her lawyer present, at Appellant's invitation. There is nothing in the record to show circumstances in which the Appellant was in any way deprived of an opportunity to exercise "a free and uncon-strained will." The only issue remaining is whether the actions utilize by the police officers in this situation constituted "techniques and methods offensive to due process", as established in the *Elstad* decision. The law enforcement officers interviewed Appellant with her attorney present, in her attorney's office. I find nothing improper about the law enforcement officers telling the suspect she should cooperate. And, while the use of misstatements of fact by the officers regarding the evidence they had collected may not comport with a sense of "fair play", the statements made in this fact situation do not amount to a due process violation. Under the totality of the circumstances as set forth in *United States v. Washington,* 431 U.S. 181, 188, 97 S.Ct. 1814, 1819, 52 L.Ed.2d 238 (1977), I find nothing in the techniques used in this case which is so offensive to due process that suppression of Appellant's admissions is necessary. *See Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) (police misrepresented to defendant his cousin had already confessed to the crime, and the defendant followed suit; while misrepresentation was relevant, it was insufficient to make the otherwise voluntary confession inadmissible). This admission by the Appellant was, without doubt, voluntary and the method utilized by the law enforcement officers to obtain the admission, does not violate due process. I therefore concur in the results reached by the Court in this case and would **AFFIRM** the judgment and sentence.