**Leland James DODD, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–91–708.**

Court of Criminal Appeals of Oklahoma.

July 29, 1994.

---

824

Tim Wilson, Public Defender's Office, appeared at trial and Lee Ann Jones Peters, Asst. Public Defender, appeared on appeal, Oklahoma City, for appellant.

Wes Lane, Asst. Dist. Atty., appeared at trial, and Susan Brimer Loving, Atty. Gen. of Oklahoma and Steven S. Kerr, Asst. Atty. Gen., appeared on appeal, Oklahoma City, for appellee.

## OPINION

JOHNSON, Vice Presiding Judge:

Appellant, Leland James Dodd, was charged in Oklahoma County Case No. CF–90–3070, with the crimes of Trafficking in Illegal Drugs (Count I), Conspiracy to Traffic in Controlled Dangerous Substances (Count II), and Attempting to Maintain a Vehicle Where a Controlled Dangerous Substance is Kept (Count III). All of the charges were filed after former conviction of two or more felonies. The case was tried by a jury before the Honorable Eugene H. Mathews, District Judge. The jury returned a verdict of guilty on Counts II and III and found appellant guilty of the lesser included offense of Possession with Intent to Distribute on Count I. The jury recommended that appellant be sentenced to life imprisonment and a $40,000 fine on Count I; life without parole and a $100,000 fine on Count II; and ten years imprisonment and a $20,000 fine on Count III. The trial court sentenced appellant in accordance with the jury's recommendation, suspended the fines and ordered that the sentences be served concurrently. From this Judgment and Sentence, the Appellant has perfected his appeal to this Court.

Appellant's convictions were the result of a lengthy sting operation conducted in Oklahoma City by the District Attorney's Drug Task Force. In March of 1990, Gene Cox, a paid informant, introduced Sergeant Janice Guyton of the Oklahoma City Police Department to a small time drug dealer named Kenneth Holland. Guyton purchased seven quarter-ounce bags of marijuana from Holland on this occasion. Sergeant Guyton re-

turned to Holland's house on March 30, 1990, in an attempt to purchase more marijuana. She was accompanied by police officer Ron Lock on this occasion, who pretended to be her husband "Terry". Holland did not have any marijuana but stated that he was looking for a new source.

Sergeant Guyton and Officer Lock did not meet with Holland again until May 28, 1990. The Oklahoma City area was experiencing marijuana drought at this time. Guyton told Mr. Holland that she and "Terry" had met a connection offering to sell Thai weed, the best marijuana on the market, but that the least she could "shovel" for them was fifty pounds. Holland stated that he knew of a man who might be interested in and able to buy such a quantity. The appellant was that man. Mr. Holland contacted an acquaintance Brandon Payne, who personally knew appellant.

The next day, Sergeant Guyton and Officer Lock took Mr. Holland to Brandon Payne's residence in Midwest City. Payne contacted appellant, who eventually came over. At this time, Officer Lock offered to sell appellant 50 pounds of the Thai marijuana for $800 per pound or 100 pounds for $775 per pound. Appellant agreed to buy fifty pounds for $40,000. Lock and Guyton were to call the Paynes in a couple of days to make sure the deal was on.

The exchange was finally set up to occur at the Holiday Inn in Midwest City. The first time appellant drove to the hotel he went to the wrong room. When he returned to the hotel the second time, he was accompanied by Sam Ivers. Although they found the right room, appellant only gave Officer Lock $5000 and suggested that Lock just bring the marijuana over to his house. Officer Lock declined to proceed under this new arrangement and returned the money to appellant. After appellant left the hotel, Officer Lock and Sergeant Guyton believed that the deal was not going to go through. They were calling the District Attorney's Office to find out what to do when appellant reappeared at the door. Appellant stated that he was ready to do the deal and threw the money on the bed. Officer Lock directed Sergeant Guyton to start counting the money and told appellant to weigh out the marijuana. As appellant picked up one of the packages, the signal for the bust was given and appellant and Mr. Ivers were arrested.

Appellant presents six propositions of error on appeal. We will begin our review with appellant's second assignment of error. Appellant contends that the trial court erroneously instructed the jury on the range of punishment for the crime of Conspiracy to Traffic in Illegal Drugs. Pursuant to 63 O.S.Supp.1989, §§ 2–408 and 2–415, the court instructed the jury that the offense was punishable by life without parole if the jury found that appellant had previously been convicted of two or more drug-related felonies. Section 2–408 provides:

> Any person who ... conspires to commit any offense defined in the Uniform Controlled Dangerous Substances Act, Section 2–101 et seq. of this title shall be subject to the penalty prescribed for the offense, the commission of which was the object of the ... conspiracy.

Section 2–415(D)(3) sets punishment at life without parole for the offense of Trafficking if the defendant has previously been convicted of two or more drug related felonies.

However, appellant submits the Trafficking in Illegal Drugs Act is not part of the Uniform Controlled Dangerous Substances Act. Appellant therefore maintains that 21 O.S.1981, § 421 and 21 O.S.Supp.1989, § 51 are controlling and that the appropriate range of punishment for the offense is a minimum of twenty years with no maximum. We disagree.

A review of Chapter 2 of Title 63 clearly reveals that the Legislature intended the Trafficking in Illegal Drugs Act to be a part of the Uniform Controlled Dangerous Substances Act. In fact, Section 2–408 specifically states that the Uniform Controlled Dangerous Substances Act is comprised of Section 2–101 et seq. of Title 63. Any other interpretation by this Court would have absurd consequences. *State ex rel. Hicks v. Freeman,* 795 P.2d 110, 112 (Okl.Cr.1990); *Berry v. State ex. rel. Oklahoma Public Employees Retirement System,* 768 P.2d 898, 901 (Okl.1989). For these reasons, the court

properly instructed the jury on the range of punishment for the offense of Conspiracy to Traffic in Illegal Drugs.

■ In his third allegation of error, appellant asserts the verdicts on Counts II and III were not properly received by the trial court in compliance with 22 O.S.1991, § 922. Title 22, Section 922 provides:

When the verdict is given, and is such as the court may receive, the clerk must immediately record it in full upon the minutes, and the judge or the clerk must read it to the jury and inquire of them whether it is their verdict. If any juror disagree, the fact must be entered upon the minutes, and the jury again sent out; but if no disagreement is expressed, the verdict is complete, and the jury must be discharged from the case.

The problem arose when the jury returned an improper verdict form on Count I. Upon discovering the error, Judge Mathews immediately sent the jury out to resume their deliberations. Although he acknowledged that the verdicts rendered in Counts II and III were in proper form (Tr. 331), Judge Mathews failed to read these verdicts to the jury and inquire of them whether they were in fact their verdicts. After receiving a proper verdict as to Count I, the court moved directly on to the sentencing stage of the trial. At the conclusion of this stage, the jury was polled as to the guilty verdicts and their respective sentences. (Tr. 443–449)

Section 922 ensures the accuracy of a jury's written verdict. While the court did not properly comply with Section 922, we find this error to be harmless as any discrepancy the statute meant to protect against would have been discovered when the jury was polled at the conclusion of the sentencing stage. The action by the court was clearly a continuation of the trial and the deliberations of the jury and sufficiently complied with the statute. Consequently, this assignment of error fails.

■ Appellant contends next that the punishment of life imprisonment without parole for the crime of Conspiracy to Traffic is cruel and unusual punishment. Appellant specifically contends his sentence is grossly disproportionate to his crime. When addressing an Eighth Amendment proportionality claim, a reviewing court must consider "the gravity of the offense and the harshness of the penalty" and protect against gross disproportionality. *Solem v. Helm,* 463 U.S. 277, 290–92, 103 S.Ct. 3001, 3009–11, 77 L.Ed.2d 637 (1983). "Within this limitation, the determination of the proper penalty is a matter for the legislature." *United States v. Youngpeter,* 986 F.2d 349, 355 (10th Cir.1993); *see also Harmelin v. Michigan,* 501 U.S. 957, 997–98, 111 S.Ct. 2680, 2703, 115 L.Ed.2d 836, 867 (1991) (Kennedy, J. concurring); *United States v. Easter,* 981 F.2d 1549, 1556 (10th Cir.1992); *United States v. Abreu,* 962 F.2d 1425, 1428 (10th Cir.1992); *Maxwell v. State,* 775 P.2d 818, 820 (Okl.Cr.1989).

■ However, the issue of proportional sentencing has not been finally resolved as is evidenced by the Supreme Court's plurality decision in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). While a majority of the Court in *Harmelin* did hold that the constitution imposes a proportionality requirement on non-capital sentences, the Court refused to extend the line requiring individualized sentencing to non-capital cases. 501 U.S. at 993–96, 111 S.Ct. at 2701–2702. Therefore, mandatory sentences in non-capital cases are permissible.

While life without parole is a very harsh penalty, the Supreme Court has upheld similarly severe sentences for drug offenses. For example, in *Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982), the Court rejected an Eighth Amendment challenge to a prison term of 40 years for possession with intent to distribute nine ounces of marijuana. Likewise, although clearly split in its reasoning,[1] the Court in *Harmelin,*

---

1. Justice Scalia joined by Chief Justice Rehnquist argued that the Court's decision in *Solem* should be overruled stating "the Eighth Amendment contains no proportionality guarantee." *Harmelin,* 501 U.S. at 965, 111 S.Ct. at 2686. Although concurring in the judgment, Justice Kennedy, joined by Justice O'Connor and Justice Souter, concluded that the cruel and unusual punishments clause does encompass a narrow proportionality principle that applies to non-capital as well as capital sentences. 501 U.S. at 995–97, 111 S.Ct. at 2702 (Kennedy, J. concurring).

*supra*, upheld a life sentence with no possibility of parole for a defendant convicted of possessing 672 grams of cocaine.

■ In spite of these decisions, appellant firmly asserts these cases are distinguishable as he was convicted of an inchoate offense. While Conspiracy to Traffic is an inchoate offense, Oklahoma law only mandates that a defendant be sentenced to life without parole for this offense when the defendant has two or more prior felony drug convictions. Appellant had previously been convicted of four felony drug offenses. Had appellant had no prior convictions, the appropriate range of punishment would have been a term of imprisonment not less than four years nor more than life. Had he only had one prior conviction, the minimum sentence would have been six years.

■ The fact that Oklahoma may be the only State which imposes a sentence of life without parole for this offense does not automatically render the punishment grossly disproportionate. "Absent a constitutionally imposed uniformity inimical to traditional notions of federalism, some State will always bear the distinction of treating particular offenders more severely than any other State." *Rummel v. Estelle*, 445 U.S. 263, 281, 100 S.Ct. 1133, 1143, 63 L.Ed.2d 382 (1980). Moreover, we cannot find that the Oklahoma Legislature was blatantly unreasonable when it set the punishment for third time felony drug offenders in these cases at life without parole. As Justice Kennedy so clearly expressed in his concurring opinion in *Harmelin*, 501 U.S. at 1000–04, 111 S.Ct. at 2705–2706, the drug epidemic in this country is one of the most serious contemporary social problems that faces us today.

■ With all this in mind, we turn to the case at hand. Appellant was convicted of conspiring to traffic fifty pounds of marijuana. The crime of Conspiracy to Traffic is a very serious offense. Furthermore, appellant committed this offense after previously being convicted of four other felony drug offenses. The appellant not only has the

four prior drug charges, but was convicted of a fifty-pound sale and an offer of one hundred pounds. This is not a minor drug offense but a major crime. In light of these circumstances, appellant's sentence cannot be found to violate either the Eighth Amendment or Article 2, Section 9 of the Oklahoma Constitution. While appellant's sentence is very severe, the sentence is not grossly disproportionate to the crime in this case. Therefore, this proposition of error fails.

■ In his fifth assignment of error, appellant contends the government was overly involved in these crimes to the extent that he was deprived of due process and was entrapped as a matter of law. We disagree. "Entrapment may be claimed as a defense when the defendant is induced by law enforcement agents to commit a crime which he otherwise would not have committed, except for the trickery of the officer." *Carney v. State*, 679 P.2d 1303, 1304 (Okl.Cr.1984). "To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." *Sherman v. United States*, 356 U.S. 369, 372–373, 78 S.Ct. 819, 821, 2 L.Ed.2d 848 (1958). Consequently, even if a defendant is induced to commit a crime, he may not take advantage of the defense if he was otherwise predisposed to commit it. *Carney* at 1304.

■ Appellant was clearly not entrapped as a matter of law, and the court properly sent the question to the jury. The government merely furnished appellant with the opportunity to commit these crimes. *See Campbell v. State*, 651 P.2d 696, 698 (Okl.Cr. 1982); *Taylor v. State*, 621 P.2d 1184, 1185 (Okl.Cr.1980). Unfortunately for him, appellant was an "unwary criminal" who seized the opportunity. This proposition of error fails.

■ Finally, appellant asserts as to Count III that the evidence was insufficient to prove the offense of Attempting to Maintain a Vehicle Where a Controlled Dangerous Substance is Kept. We agree. In order to successfully prosecute an accused for an at-

However, upon review, Justice Kennedy determined the accused's sentence was not "grossly disproportionate" to the crime.

tempted crime, the State must prove three elements: (1) the intent to commit a specific crime; (2) the performance of an overt act toward the commission of that crime; and (3) the failure to complete that crime. *Rosteck v. State*, 749 P.2d 556, 559 (Okl.Cr.1988); *James v. State*, 711 P.2d 111, 113 (Okl.Cr. 1985); *Weimar v. State*, 556 P.2d 1020, 1024 (Okl.Cr.1976). In the present case, appellant drove the same GMC Jimmy truck each time he went to the hotel. This evidence alone is simply insufficient to prove that the appellant intended to maintain his vehicle for the purposes of keeping and/or selling marijuana.

■ Moreover, even if appellant's actions had not been hindered by extraneous causes, the evidence fails to establish that his acts under the "usual and natural course of events" would have resulted in the commission of the crime of Maintaining. *Rosteck*, 749 P.2d at 559; *see also Dunbar v. State*, 75 Okl.Cr. 275, 131 P.2d 116, 122 (1942). Pursuant to *Howard v. State*, 815 P.2d 679, 683 (Okl.Cr.1991), the State must prove the following two elements when prosecuting an accused under Title 63, Section 2–404(A)(6) for Maintain a Vehicle: (1) that a "substantial purpose" of the vehicle was for the keeping, selling, or using of controlled dangerous substances; and (2) that the activity giving rise to the charge was more than a single, isolated activity. The evidence in the instant case merely demonstrated that appellant intended to use the vehicle to transport the marijuana from the motel premises. This alone is insufficient to demonstrate that a "substantial purpose" of the vehicle was for the keeping, selling, or using of marijuana. Consequently, we reverse appellant's conviction for Attempting to Maintain a Vehicle Where a Controlled Dangerous Substance is Kept and remand the case to the District Court with instructions to dismiss.

For the above stated reasons, we **AFFIRM** the judgments in Counts I and II, and **REVERSE** the judgment in Count III and **REMAND** the case to the District Court with instructions to dismiss.

1. States are free to interpret their own state constitutional provisions. *See Michigan v. Long*, 463 U.S. 1032, 1037–1042, 103 S.Ct. 3469, 3474–3477, 77 L.Ed.2d 1201, 1212–1215 (1983); *Mes-*

LUMPKIN, P.J., and LANE, J., concur.

CHAPEL, J., concurs in part/dissents in part in which STRUBHAR, J., joins.

CHAPEL, Judge, concurring in part/dissenting in part:

I concur in the Court's decision to affirm the judgment in Count I and to reverse the judgment in Count III. I respectfully dissent to the Court's decision to affirm Count II, the conspiracy conviction, as I find merit in Dodd's Proposition IV.

In Proposition IV, Dodd argues the sentence of life imprisonment without the possibility of parole for the crime of conspiracy to traffic in illegal drugs constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution and Article II, section 9 of the Oklahoma Constitution. I find the mandatory sentence of life without parole in this case violates Article II, section 9 of the Oklahoma Constitution.

The majority concludes that the mandatory sentence of life without parole for conspiracy to traffic in illegal drugs does not violate either the federal or Oklahoma constitutions. In reaching this conclusion, the majority relies on *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Michigan statute imposing mandatory penalty of life without parole for possession of 650 grams of cocaine did not offend cruel and unusual punishments clause of Eighth Amendment) and other cases construing the Eighth Amendment of the United States Constitution. I find that the language of Article II, section 9 of the Oklahoma Constitution differs in a significant respect from the federal constitution, and the imposition of a sentence of life without parole violates our state constitution.[1]

Article II, section 9 of the Oklahoma Constitution provides:

*senger v. Messenger*, 827 P.2d 865, 872 (Okl. 1992); R. Rotunda, J. Nowak & J. Young, Treatise on Constitutional Law: Substance and Procedure Sec. 1.6(c) at 31–32.

Excessive bail shall not be required, nor excessive fines imposed, nor cruel *or* unusual punishments inflicted.

(emphasis added) In contrast the Eighth Amendment of the United States Constitution provides:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel *and* unusual punishments inflicted.

(emphasis added) I find the textual differences between these two constitutional provisions to be significant and I believe this textual difference distinguishes Dodd's case from the United States Supreme Court holding in *Harmelin v. Michigan, supra.*[2]

A useful analogy to Article II, section 9 of the Oklahoma Constitution can be found in the Michigan Constitution. Like Oklahoma, the Michigan Constitution prohibits "cruel *or* unusual punishments." Mich. Const.1963, art. 1, § 16. The Michigan Supreme Court examined the textual differences between their constitution and the United States Constitution in *People v. Bullock*, 440 Mich. 15, 485 N.W.2d 866 (1992), and the Michigan court's discussion and analysis in *Bullock* is instructive. In *Bullock,* the Michigan court found that its state statute imposing a mandatory penalty of life without parole for possession of 650 grams of cocaine violated the state constitutional provision prohibiting cruel *or* unusual punishments.[3] While recognizing that the United States Supreme Court holding in *Harmelin* was binding for the purposes of construing the federal constitution, the Michigan court stated that it possessed ultimate authority in interpreting the state constitution. *Id.* 485 N.W.2d at 870. The Michigan Court concluded that the mandatory life without parole penalty for possession of 650 grams of cocaine violated the cruel *or* unusual punishments clause of the State constitution. I agree with the reasoning of the Michigan Supreme Court and find the cruel *or* unusual punishments clause of the Oklahoma Constitution must also be con-

strued to prohibit the mandatory penalty of life without parole in Dodd's case.

Dodd was sentenced to life imprisonment without the possibility of parole for the offense of Conspiracy to Traffic in a Controlled Dangerous Substance (Marijuana). As the majority opinion states, the evidence showed Dodd was caught in a sting operation involving the attempted sale of fifty pounds of marijuana. The jury found Dodd not guilty of the offense of Trafficking in Illegal Drugs, the underlying felony for the conspiracy charge. The jury only found Dodd guilty of the lesser offense of Possession of a Controlled Dangerous Substance with Intent to Distribute and sentenced him to life imprisonment for that crime.

Under 63 O.S.Supp.1987, § 2–415(D)(3), the sentence of life without the possibility of parole for conspiracy to traffic in illegal drugs is mandatory. This sentence for the crime of conspiracy is grossly disproportionate in comparison with other states and in comparison with sentences imposed for other crimes in this State. The only other crime subject to the punishment of life without parole in Oklahoma is First Degree Murder. However, even persons convicted of First Degree Murder may be sentenced to life imprisonment whereas the only sentence available for Dodd was life imprisonment without the possibility of parole. Other horrible, violent crimes, such as rape, second degree murder, and armed robbery, are not punished as severely as Dodd was for conspiracy to traffic in marijuana. Even persons with numerous prior convictions for violent felony offenses who commit another violent crime are not punished as harshly as Dodd. Such a severe and grossly disproportionate punishment for an inchoate crime such as conspiracy is, at a minimum, unusual, and indeed, under the facts of this case, may be considered cruel.

I find the punishment of life imprisonment without the possibility of parole for the crime of conspiracy to traffic in illegal drugs vio-

---

**2.** *Harmelin* is distinguishable from Dodd's case. The defendant in *Harmelin* was convicted of possessing in excess of 650 grams of cocaine. In contrast, Dodd was convicted of conspiracy to traffic in marijuana.

**3.** The *Bullock* court examined the same statute that the United States Supreme Court examined and found constitutional under the Eighth Amendment in *Harmelin, supra.*

lates the cruel or unusual punishment clause of Article II, section 9 of our State Constitution. This finding does not diminish the severity or wrongfulness of Dodd's conduct in this case. Nonetheless, the punishment that may be inflicted for this offense must be in keeping with the will of the people as expressed in our State Constitution. I am authorized to state that Judge Strubhar joins me in this separate opinion.