**Charles Herbert APPLEGATE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–94–0319.

Court of Criminal Appeals of Oklahoma.

Sept. 13, 1995.

As Corrected Oct. 11, 1995.

Max Cook, Assistant District Attorney, Sapulpa, for state.

W.A. Drew Edmondson, Attorney General of Oklahoma, G. Lynn Burch, Assistant Attorney General, Oklahoma City, for appellee.

## OPINION

STRUBHAR, Judge:

Appellant, Charles Herbert Applegate, was tried by jury in the District Court of Creek County, Case Numbers CRF–93–101 and CRF–93–240, before the Honorable Donald D. Thompson, District Judge. Appellant was convicted of six counts of Lewd Molestation After Two Former Lewd Molestation Convictions (21 O.S.Supp.1992, § 1123(A)) and two counts of Forcible Sodomy (21 O.S.1991, § 888). The jury recommended sentences of life without parole for each of the lewd molestation convictions and twenty years imprisonment for each of the forcible sodomy convictions. The trial court sentenced Appellant accordingly and ordered the five life without parole sentences in case number CRF–93–101 to run concurrently, but consecutively to the life without parole· sentence and two twenty year terms in case number CRF–93–240, which the court also ordered to run concurrently. From this Judgment and Sentence Appellant has perfected this appeal.

During the summer of 1991 Appellant arranged for nine-year-old W.S., of Wagoner, to come and live with him in Sapulpa. Appellant was an insurance salesman and Smith's parents believed Appellant could offer him a better life. W.S. testified that a month and a half after he arrived at Appellant's mobile home Appellant began kissing him. According to W.S., a month and a half later Appellant orally sodomized him and ordered W.S. to orally sodomize Appellant. W.S. testified this occurred "a lot." W.S. also testified he and Appellant "sometimes" showered together and washed each other's genitals. W.S. lived with Appellant until Appellant's arrest in March, 1993.

During his stay, W.S. became acquainted with C.H., a boy his age who lived near Appellant. W.S. and C.H. often played together and C.H. spent the night at Appellant's trailer on occasion. In February, 1993

C.H. told his father and grandfather Appellant had molested him. C.H. then told police that between September, 1992 and February, 1993 Appellant had touched his private area several times through his clothing and had ordered C.H. to touch Appellant, as well. At trial C.H. testified he and W.S.on had once slept with Appellant after he told them scary stories. C.H. testified Appellant molested him while in bed on that occasion.

When Appellant was arrested he waived his *Miranda* rights and was questioned by Detective Jim Wall. Detective Wall testified Appellant denied having molested C.H. or W.S. However, according to Detective Wall Appellant did recount an episode in which C.H. had grabbed Appellant's "nuts." Appellant explained he then grabbed C.H.'s "nuts" in order to get C.H. to let go of him. After Appellant's arrest, W.S. approached C.H. and told him not to tell on Appellant. W.S. even returned to live with Appellant briefly after this. Later, W.S. told his parents and police Appellant had molested him also.

■ Appellant presents ten propositions of error on appeal. We will first review Appellant's allegations involving his sentences. Appellant alleges as his first proposition of error that he was subjected to an *ex post facto* violation. In May, 1992 changes in the lewd molestation statute went into effect which provided that upon a third conviction for lewd molestation the sentence options are life or life without parole. 21 O.S.Supp.1992, § 1123(A). Appellant alleges he was subjected to an *ex post facto* punishment for the lewd molestation offense against W.S. The evidence at trial was clear that the offenses against C.H. began during the fall of 1992. These offenses were therefore after the effective date of the amended statute and Appellant does not challenge those sentences here.

The evidence at trial was less clear, however, on the dates of the lewd molestation of W.S. At trial W.S. testified he moved in with Appellant in the summer of 1991. W.S. further testified that Appellant began kissing his cheek "about a month and a half" after he moved in. W.S. testified Appellant orally

sodomized him "... a long time after, about a month and a half," (after) the kissing began. Therefore, these events appear to all have occurred during the last six months of 1991, well before the effective date of the amended punishment provision. W.S. was never specific about the dates of the lewd molestation, which occurred in the shower.[1] W.S. only testified the two showered together "sometimes."

■ Because the evidence in no way indicates W.S. was molested after the effective date of the amended punishment provision, Appellant was subjected to an *ex post facto* violation. The *ex post facto* clause [2] applies to four specific situations. A law which changes the punishment and inflicts a greater punishment than the law annexed to the crime, when committed, is one of these situations. *Calder v. Bull*, 3 Dall. 386, 390, 1 L.Ed. 648 (1798); *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990); *Allen v. State*, 821 P.2d 371, 375 (Okl.Cr.1991). This case involves exactly such a situation. At the time of the commission of the offense against W.S., the offense of lewd molestation did not include a specific enhancement provision. Nevertheless, because Appellant had two prior lewd molestation convictions the jury was instructed the maximum sentence was life without parole, as required by the amended specific enhancement statute. Therefore, the sentence options provided at trial were greater than the sentence annexed to the crime at the time of its commission.

In order to sentence Appellant to life without parole, the jury necessarily found Appellant guilty of two prior felonies. At the time of the commission of the offense against W.S., the sentence range for a felony after conviction of two or more felonies was not less than twenty years. 21 O.S.1991, § 51(B). The jury clearly intended to sentence Appellant to the maximum term. However, life without parole was not an available punishment under the general enhancement provision. 21 O.S.1991, § 51(B). Therefore, we now modify Appellant's sentence of life without parole for the sole count of lewd molestation of W.S., case number CRF–93–240, to fifty years imprisonment.

■ In his third proposition of error Appellant asks us to address for the first time the sentence of life without parole for lewd molestation. Appellant urges that the sentence is cruel and unusual punishment and also disproportionate to the crime.[3] Before the amended statute went into effect, upon a third conviction for lewd molestation enhancement was proper only under the general enhancement statute. That statute provides only that the minimum sentence is twenty years after two former felony convictions. 21 O.S.1991, § 51. By creating a specific enhancement provision for lewd molestation the Legislature indicated a particular intent to protect children from repeat molesters.[4] The Supreme Court has held the determination of certain prison terms for specific crimes is best left to legislatures because they are peculiarly questions of legislative policy. *Rummel v. Estelle*, 445 U.S. 263, 274, 100 S.Ct. 1133, 1139, 63 L.Ed.2d 382 (1980). We must therefore give deference to the sentencing options the legislature has provided through our statutes.

Appellant has provided us with examples of the sentence ranges for other crimes in Oklahoma, as well as the ranges five other states provide for lewd molestation. However, these examples in no way indicate we should determine life without parole upon a third conviction of lewd molestation consti-

---

1. The following exchange illustrates the vagueness of the timing: (tr. 339)
   Q: Which happened first?
   A: He kissed me on the cheek.
   Q: And after that what was the next thing that was unusual that happened?
   A: It was before that something happened, like we took showers together and I slept with him, but—and then that [oral sodomy] happened.

2. U.S. Const. art. I, § 10 and Okla. Const. art. II, § 15.

3. Cruel and unusual punishments violate the United States Constitution. U.S. Const. art. VIII. The Oklahoma Constitution forbids cruel *or* unusual punishments. Okl. Const. art. II, § 9.

4. The amended punishment provision applies only to offenses committed against persons under sixteen.

tutes cruel and unusual punishment. Indeed, the Supreme Court has held it is unnecessary to weigh sentencing options other states have enacted, because necessarily one state must have the most severe punishment provision. *Harmelin v. Michigan,* 501 U.S. 957, 989–91, 111 S.Ct. 2680, 2699, 115 L.Ed.2d 836 (1991) (plurality decision). We do note this Court has recently held life without parole does not constitute cruel and unusual punishment for conspiracy to traffic drugs. *Dodd v. State,* 879 P.2d 822, 827 (Okl.Cr.1994). In addition, the Supreme Court has upheld a mandatory life without parole provision for possession of drugs. *Harmelin.*

These two decisions indicate first, life without parole for some noncapital offenses is constitutional, and second, mandatory life without parole terms may also be constitutional. Therefore, the sentence Appellant received is not inherently cruel and unusual. The specific enhancement provision for lewd molestation is less severe than the provisions upheld in *Dodd* and *Harmelin,* because it affords the jury the option of life or life without parole rather than imposing a mandatory life without parole sentence. Finally, Appellant has failed to present persuasive authority for his contention his sentences constitute cruel and unusual punishment. These considerations have aided our decision to uphold the sentencing options provided by the legislature. We therefore find that the sentence of life without parole is not cruel and unusual punishment, nor is it disproportionate to the crime.

Along with his argument his sentences constitute cruel and unusual punishment, Appellant also contends his sentences are excessive. Appellant argues that six sentences of life without parole do not bear a direct relationship to the crimes committed. Appellant notes he was convicted for touching two boys outside their clothing. This is an understatement of the evidence. While C.H. testified Appellant always touched him

outside of his clothing, W.S. testified Appellant touched him in the shower and orally sodomized him. Appellant also had two prior convictions for lewd molestation.[5] Therefore, we are unwilling to find the sentences do not bear a direct relationship to the crimes committed. Further, sentences which are within the statutory range will not be reversed unless they shock the conscience of the court. *Bartell v. State,* 881 P.2d 92, 101 (Okl.Cr. 1994). For the reasons stated above, these sentences, while severe, are within the range provided by law and do not shock the conscience of this Court.

In his sixth proposition of error Appellant argues the specific enhancement provision within the lewd molestation statute is unconstitutionally vague when applied with the general enhancement provision. 21 O.S.Supp.1992, § 1123(A), 21 O.S.1991, § 51. At trial the court properly instructed the jury that if it found Appellant had two prior lewd molestation convictions, the sentencing options were life or life without parole. The text of the lewd molestation statute is clear on this point.[6] The two prior convictions the State alleged were both convictions based on § 1123(A). When a specific provision affects punishment, that statute governs over a general punishment provision. 21 O.S.1991, § 11; *Wooten v. State,* 702 P.2d 59, 61 (Okl. Cr.1985). Therefore, we find the lewd molestation convictions were properly enhanced under the specific enhancement provisions.

The forcible sodomy statute also was amended in 1992 to provide the options of life or life without parole upon a third conviction for forcible sodomy of a child under sixteen. 21 O.S.Supp.1992, § 888. Because the prior felony convictions alleged by the State did not involve forcible sodomy, enhancement of the forcible sodomy convictions was proper only under the general enhancement statutes. However, the trial court chose not to instruct the jury on two different enhance-

5. The State's notice of intent to introduce evidence of prior crimes and bad acts alleged Appellant had been charged or convicted of lewd molestation on several other occasions since 1972. These were not put in evidence at trial.

6. 21 O.S.Supp.1992, § 1123 states: "Any person convicted of a third or subsequent violation of subsection A of this section shall be punished by imprisonment in the State Penitentiary for a term of life or life without parole ..." Subsection A proscribes lewd molestation of persons under sixteen years of age.

ment provisions (one general and one specific). Therefore, Appellant's two forcible sodomy convictions were not enhanced in any way. Appellant argues the court demonstrated the vagueness of the enhancement statutes with this choice. This argument is unfounded. The forcible sodomy enhancement provision is identical to the lewd molestation enhancement provision. The court's decision not to instruct on enhancement of the sodomy counts inured to Appellant's benefit. No error requiring modification or reversal occurred.

■ Appellant alleges in his seventh allegation of error that the jury impermissibly considered parole when it deliberated sentencing with the option of life without parole. We have previously determined that the legislature intended for the jury to consider the possibility of parole when it assigned life without parole as a possible sentence for certain crimes. *Mayes v. State,* 887 P.2d 1288, 1316 (Okl.Cr.1994).[7] We therefore find no merit in Appellant's contention here.

■ We now turn to Appellant's evidentiary issues. In his second assignment of error Appellant alleges victims C.H. and W.S. both gave testimony requiring corroboration. Victim testimony in lewd molestation cases requires corroboration when the victim's testimony is so incredible or has been so thoroughly impeached as to be unworthy of belief. *Jones v. State,* 765 P.2d 800, 802 (Okl.Cr.1988); *Salyer v. State,* 761 P.2d 890, 895 (Okl.Cr.1988). A child victim's testimony does not require corroboration when it is lucid, clear, and unambiguous. *Salyer.* The trial court instructed the jury that no person could be convicted of lewd molestation on uncorroborated testimony if the victims' testimony was impeached or inconsistent or improbable. The court also instructed the jury on the existence of impeachment evidence. The determination of whether corroboration was required and whether corroboration existed were properly left to the jury.

■ Although C.H. and W.S. gave slightly different stories before trial, each was consistent at trial and was subjected to thorough cross-examination. In addition, C.H.'s father and grandfather corroborated his trial testimony. W.S.'s mother corroborated his testimony. Detective Wall testified that when he questioned Appellant, Appellant stated he grabbed C.H.'s crotch in order to make C.H. let go of Appellant's crotch. This statement corroborated C.H.'s testimony that Appellant rubbed his private parts. In addition, Appellant told Detective Wall the boys slept with him once after watching a scary movie. This corroborated C.H.'s statement the boys had slept with Appellant after being scared. The examples of inconsistencies provided by Appellant are unpersuasive. We have repeatedly held it is the exclusive province of the jury to determine the weight of the evidence and the credibility of witnesses and to resolve conflicts therein. *Plantz v. State,* 876 P.2d 268, 281 (Okl.Cr.1994); *Paxton v. State,* 867 P.2d 1309, 1316 (Okl.Cr. 1993), *cert. denied,* — U.S. —, 115 S.Ct. 227, 130 L.Ed.2d 153 (1994); *Luna v. State,* 829 P.2d 69, 73 (Okl.Cr.1992). We therefore find corroborating evidence existed and the jury properly resolved the issue.

■ Appellant also argues in this assignment of error that the State presented insufficient evidence to prove Appellant's guilt beyond a reasonable doubt. The proper test for sufficiency of the evidence is whether, when viewed in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Pierce v. State,* 878 P.2d 369, 373–74 (Okl.Cr.1994); *Spuehler v. State,* 709 P.2d 202 (Okl.Cr.1985). The jury was presented with, first, testimony of two victims who were each alone with Appellant on several occasions, second, the testimony of the investigating officer who reported Appellant gave details similar to those given by the victims, and finally, the

7. The *Mayes* holding states the consideration of parole is no longer prohibited in first degree murder sentencing only. However, *Mayes* also states: "if the legislature did not want a jury considering parole, it would not have included the term in a sentencing option." Because the legislature included the term in the specific lewd molestation enhancement provision, we extend the *Mayes* ruling to lewd molestation and all cases in which life without parole is a sentencing option.

victims' parents who also confirmed the victims provided the same reports to them. This evidence establishes more than a suspicion of guilt. Taken in the light most favorable to the State, this evidence is sufficient to establish guilt beyond a reasonable doubt.

■ As his fourth assignment of error Appellant alleges the trial court violated his constitutional right to equal protection by not allowing mitigation evidence at second stage. During second stage Appellant presented no evidence. During an *in camera* hearing defense counsel made an objection alleging the lack of a statutory provision for admitting mitigation evidence in noncapital cases is unconstitutional. The court responded that Appellant was welcome to put on evidence, take the stand, call witnesses, and cross-examine any State witnesses in second stage. In addition, the prosecutor stated he would not object to the presentation of any mitigating evidence. Instead of doing so, defense counsel simply restated his constitutional argument. The jury therefore deliberated after second stage having heard no mitigating evidence.

On appeal, Appellant has not indicated any mitigating evidence exists; he simply has stated again his constitutional argument. According to Appellant, an equal protection problem exists because our statutes expressly allow for mitigation in capital cases while they are silent about mitigation in noncapital cases.[8] Initially, we note the State's response, that Appellant was not similarly situated to capital defendants who are subject to the death penalty, is persuasive; therefore, we need not address the constitutionality of a *lack* of a statutory provision. However, we find Appellant was expressly afforded the opportunity to present mitigating evidence and chose not to, thereby waiving any constitutional claim which may exist.

■ For his fifth allegation of error Appellant asserts the trial court erred in admitting a hearsay statement. C.H.'s

grandfather testified C.H. stated he was angry with Appellant because Appellant was gay. Appellant argues this constituted a hearsay statement of a child's allegations of sexual misconduct. Appellant correctly asserts the procedure for admitting such statements would have required notice and a hearing on reliability. 12 O.S.1991, § 2803.1. However, that section requires the statement allege an instance of sexual misconduct. The statement that Appellant was gay in no way indicated sexual misconduct directed at C.H. or any other child. The trial court ruled C.H.'s grandfather's testimony of C.H.'s statement was not hearsay because it was not offered to prove the truth of the matter asserted but to show state of mind. We will not find error in such a determination absent an abuse of the trial court's discretion.

■ In his ninth allegation of error Appellant alleges he was prejudiced by prosecutorial misconduct during closing argument. Because Appellant made no objection to the prosecutor's comments during closing argument, we only review for fundamental error. *Freeman v. State*, 876 P.2d 283, 287 (Okl.Cr.1994), *cert. denied,* — U.S. —, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994). After a thorough review of the entire closing argument transcript, it is evident the prosecutor's comments were all fair comments on the evidence and not admitted in error.

Finally Appellant alleges cumulative errors occurring at trial require reversal or modification of his sentences. We have found only one error and have accordingly modified Appellant's sentence. Having found no other error, we will not find cumulative error and therefore we will not reverse or further modify Appellant's sentences.

The judgments of the trial court are **AFFIRMED.** The sentences in case number CRF–93–101 and the two twenty year terms in case number CRF–93–240 also are **AFFIRMED.** However, the sentence of life

---

8. 21 O.S.1991, § 701.10. This section states mitigation *may be* offered. 21 O.S.1991, § 701.11 requires that if the mitigating evidence outweighs the aggravators, then the sentence of death shall not be imposed. Appellant refers to evidence of prior crimes as aggravators. This label would

indicate that mitigation ought to be provided for in the statute. However, the label is incorrect. In addition, the weighing of mitigating evidence against aggravators is expressly for capital cases and therefore is not relevant here.

without parole in case number CRF–93–240 is **MODIFIED** to fifty years imprisonment.

JOHNSON, P.J., CHAPEL, V.P.J., and LUMPKIN and LANE, JJ., concur.